Peter Strojnik (Sr.)
7847 N. Central Ave.
Phoenix, Arizona 85020
Telephone: (602) 524-6602
PS@strojnik.com

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

PETER STROJNIK, (Sr.)

Plaintiff,

vs.

STATE BAR OF ARIZONA,

Defendant.

Case No:   **CV-19-02704-PHX-DJH**

**COMPLAINT FOR**

1. **42 U.S.C. § 1981 et seq Claims for**

   (a) **Violation of Plaintiff's 1st Amendment Right of Dissociation,** and for

   (b) **Violation of Plaintiffs right to be free from (1) retaliation, (2) interference, (3) coercion and/or (4) intimidation pursuant to 42 USC §12203 and 28 CFR §36.206,** and for

   (c) **Conspiracy to Violate Civil Rights.**

1. In this Action Plaintiff seeks damages against the State Bar of Arizona ("SBA") pursuant to 42 US Code §§1981, 1981a, 1983, 1985 and 1988 for violation of Plaintiff's 1st Amendment Right of Dissociation, statutory rights of freedom from (1) retaliation, (2) interference, (3) coercion and/or (4) intimidation pursuant to 42 USC §12203 and 28 CFR §36.206 and for conspiracy to violate Plaintiff's civil rights with non-party AG Mark Brnovich ("Brnovich").

2. Both Plaintiff and SBA desire a complete dissociation one from the other: SBA seeks to disbar Plaintiff in connection with civil rights work by Plaintiff and Plaintiff seeks

to dissociate himself from the SBA because he finds SBA's expressive conduct incompatible with his fundamental sense of integration, equality, morality and fair play.

3. Despite both parties' identical purpose – absolute and final dissociation one from the other - SBA has denied Plaintiff his 1st Amendment right of expressive dissociation in order to (1) retaliate and coerce Plaintiff to confirm to SBA's expressive segregationist creed, and (2) to intimidate and interfere with Plaintiff's 1st Amendment right to redress his own personal grievances.

4. In its conduct, SBA conspired with Arizona's Attorney General Mark Brnovich all as more fully developed below.

5. The allegations based on "information and belief" are "based on factual information that makes the inference of culpability plausible," although a court may take into account whether "facts are peculiarly within the possession and control of the defendant." *Menzel v. Scholastic, Inc.*, No. 17-cv-05499-EMC, 2018 U.S. Dist. LEXIS 44833, at *5 (N.D. Cal. 2018)

## JURISDICTION AND VENUE

6. The actions or omissions that form the basis for the Plaintiffs' claims herein occurred in Maricopa County in the State of Arizona. The Court has jurisdiction over the claims alleged herein pursuant to 28 U.S.C. §§ 1331 and 1343 for claims arising under 42 U.S.C. §§ 1981, 1981a, 1983, 1985 and 1988. The Court has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. 18. Venue in this Court is appropriate under 28 U.S.C. § 1391(b)(2) because the Defendant is located within this District.

## PARTIES

7. Plaintiff is a single man currently residing in Maricopa County, Arizona. Plaintiff is an immigrant and a veteran and has been, at all times relevant hereto, legally disabled by virtue of a severe right-sided neural foraminal stenosis with symptoms of femoral neuropathy, prostate cancer and renal cancer, degenerative right knee. He currently suffers from memory loss and other amnesia. Plaintiff is a member of a protected class under the Americans with Disabilities Act.

8. Plaintiff is a former member of the State Bar of Arizona having resigned on October 24, 2018 for the reason that his continued association with said agency "is inconsistent with [his] core principles of morality and fair play":



**PETER STROJNIK**

2375 EAST CAMELBACK ROAD
SUITE 600
PHOENIX, ARIZONA 85016
TELEPHONE: 602-524-6602
E-MAIL PS@STROJNIK.COM

October 24, 2018

Shauna R. Miller, Esq.
Senior Bar Counsel
*State Bar of Arizona*
4201 N. 24th Street, Suite 100
Phoenix, Arizona 85016-6288
*By e-mail only Shauna.Miller@staff.azbar.org*

Re: *Notice of Retirement and Resignation*

Dear Shauna:

I previously advised you that my continuing association with the State Bar is inconsistent with my core principles of morality and fair play and indeed, my health; therefore, I give you formal notice of my immediate retirement and resignation from your organization.

I understand that there are pending issues relating to my now former license which I will deal with in the ordinary course of business. Please do not misunderstand this notice as any admission of any impropriety; any contrary indication on your website will be viewed as defamatory.

You previously advised me that it is impossible to retire or resign from your organization and on that, let me offer this: You can tell a fish that he can't swim, and you can tell me that I can't resign. Bu he can, and I do. On a personal level, I have always found you to be amiable and cordial, and I wish you the very best in all your endeavors.

Please e-mail me a copy of this letter marked "received" and make it a part of my file.

Sincerely,

Peter Strojnik

9. Defendant SBA is a private non-profit organization established in 1933.

3

## COUNT 1
10. U.S.C. § 1981 et seq Claims for (a) Violation of Plaintiff's 1st Amendment Right of Dissociation, (b) Violation of Plaintiffs right to be free from (1) retaliation, (2) interference, (3) coercion and/or (4) intimidation pursuant to 42 USC §12203 and 28 CFR §36.206.

11. For several years Plaintiff provided legal services to the disabled community in Arizona and, in majority of cases, donated all his fees to a non-profit organization for the disabled. In his capacity as a civil rights attorney and "tester", Plaintiff filed 1,700± civil rights cases in the Maricopa County Superior Court and the US District Court for the District of Arizona.

12. As a direct and proximate result of the number of cases filed, upon information and belief, State Bar of Arizona, Brnovich, the East Mesa Chamber of Commerce, the local firm of Jennings Strauss and Salmon (in particular Lindsay Leavitt and Scott Frerichs) ("JSS") conducted at least two clandestine meetings at the offices of the East Mesa Chamber of Commerce ("EMCC") to design and develop a plan to force Plaintiff to cease enforcing disabled individuals' civil rights in the State of Arizona.

13. At one of these two clandestine meetings, upon information and belief, JSS suggested that one way of stopping Strojnik from continuing his civil rights actions was for ADA violating individuals to file bar charges against him.

14. Brnovich agreed to intervene in civil rights cases on behalf of the ADA violating public accommodations. At the above referenced meetings, upon information and belief, it was agreed that the cases would be consolidated before Superior Court Judge Talamante. In connection with Judge Talamante, a statement was made, upon information and belief, that "we have a judge".

15. Plaintiff understands and, on that basis alleges, that the statement "we have a judge" reference was made to the Superior Court of Maricopa County Judge Talamante, The statement was meant to communicate that Brnovich, SJJ, EMCC "have a judge" who will dismiss the Superior Court Cases.

16. Once agreeing to intervene and thwart the civil rights of Arizona's disabled community, Brnovich sent out criminal investigators to take photos of cars parked at

Plaintiff's location. Brnovich began investigating and intimidating Plaintiff and Plaintiff's support staff.

17. Indeed, Brnovich intervened on behalf of ADA violating public accommodations and Judge Talamante, as calculated by the statement "we have a judge", dismissed the Superior Court cases for lack of standing.

18. Judge Talamante never considered the merits of these cases.

19. Judge Talamante's dismissal was appealed.

20. On March 27, 2017, Brnovich filed a Motion for Rule 11 Sanctions, Motion for Non-Rule 11 Sanctions and for evidentiary hearing against Plaintiff.

21. On or about August 9, 2017, the 9th Circuit Court of Appeals issued the now celebrated *CREEC* decision[1] which by implication overruled Judge Talamante's dismissal for lack of standing and positively and absolutely vindicated Plaintiff.

22. At this time Brnovich, defendant State Bar of Arizona and JSS realized – or should have realized – that Judge Talamante's decision was wrong, incorrect and contrary to law and that a continued harassment and intimidation of Plaintiff was contrary to the cause of justice and, further, that ***any continued prosecution of Strojnik "would not advance the cause of justice"***. In fact, in a Court filing, Brnovich so admitted on or about November 6, 2017:

> 6. The State withdraws with prejudice its Motion(s) for sanctions pursuant to Rule 11, A.R.S. § 12-349, and the Court's inherent power, or otherwise, and for an award of attorney's fees and costs against Messrs. Ritzenthaler and Strojnik for the reason that a continuing pursuit of sanctions, costs and fees against Messrs. Ritzenthaler and Strojnik would not advance the cause of justice. This withdrawal applies solely to the consolidated cases, and does not preclude the State from acting to protect the public in other litigation.

23. In the meantime, EMCC membership and Brnovich continued filing bar charges against Plaintiff with Defendant the State Bar of Arizona.

24. Throughout the relevant period, Arizona's media was paying a close attention to Plaintiff's civil rights work, Brnovich's protection of the ADA violating public

---

[1] *Civil Rights Education and Enforcement Center v. Hospitality Properties Trust*, 867 F.3d 1093 (9th Cir. 2017)

5

accommodations and SBA's persecution of Plaintiff. Most media outlets, and particularly the most vociferous media outfit, Channel 15 and David Biscobing, took a critical view of Plaintiff's civil rights work. Indeed, Biscobing's reporting resulted in death threats against Plaintiff.

25. In order to correct the false impressions created by the media, the SBA and Brnovich, Plaintiff challenged Brnovich to a public debate wish Brnovich refused.

26. On or about December 15, 2017, Plaintiff submitted and the Arizona Republic published Plaintiff's opinion piece which explained the discriminatory actions on the part of Brnovich under the headline[2]:



---

[2] https://www.azcentral.com/story/opinion/op-ed/2017/12/15/mark-brnovich-fighting-disabled-business/944342001/

27. The above publication motivated Brnovich to retaliate for Plaintiff's civil rights work. Plaintiff's exposure of Brnovich as a hater of the disabled and a "champion of small business" (see below) caused Brnovich and SBA to agree, expressly or tacitly, to work closely together to impose maximum damage against Plaintiff.

28. SBA and Brnovich agreed that, despite Plaintiff's vindication by the *CREEC* decision, they would work together to affect Brnovich's and SBA's desire to accomplish a disbarment of Plaintiff for the purpose of (1) retaliation, (2) interference, (3) coercion and/or (4) intimidation of Plaintiff.

29. For its part, the SBA agreed to investigate the bar charges even where, in its face, a bar charge would disclose no violation of ethical rules.

30. For its part of the agreement, Brnovich agreed to (1) conduct independent investigation of Plaintiff and share the results with the SBA, (2) send out criminal investigators to investigate Strojnik and the non-profit organization to whom Strojnik donated ADA litigation proceeds ("AID"), (3) provide support and assistance in SBA's investigations of Strojnik and AID and (4) provide additional assistance to the SBA in any proceeding through testimony of Brnovich's staff.

31. The purpose of the agreements between SBA and Brnovich was for Plaintiff to incur unnecessary attorney's fees and costs, and force Plaintiff to cease his civil rights work through economic extorsion and the threat of disbarment.

32. Plaintiff was not to be economically deterred and, therefore, the SBA filed for interim suspension. At the conclusion of the Interim Suspension Hearing, the presiding judge O'Neill noted, paraphrasing, "all he has heard is that Strojnik filed meritorious ADA cases" implying that there was no basis for interim suspension.

33. Nonetheless, through a methodology and subsequent events currently unclear to Plaintiff, Judge O'Neil entered an order of interim suspension where he stated, in part:

> The evidence and testimony show that Mr. Strojnik is partaking in a scheme that will cause imminent and substantial harm to the public and administration of justice. The additional lawsuits Mr. Strojnik has filed since the State Bar's Motion for Interim Suspension show that his conduct will continue without immediate action by this Court. Any potential damage to Mr. Strojnik is outweighed by the harm to the public and to the profession.

34. Not to be lost in the above quote is that the SBA's O'Neil found that filing meritorious ADA enforcement actions constitutes a *"scheme"* and that filing meritorious ADA enforcement actions *"cause imminent and substantial harm to the public and administration of justice"*.

35. Subsequently, the SBA filed a formal complaint against Strojnik. The Complaint was based, in part, on SBA's position that filing meritorious civil rights lawsuits is "wreak[ing] havoc" requiring SBA immediate action to stop it. In its communications with the Brnovich, the SBA stated:

> **From:** Shauna Miller [mailto:Shauna.Miller@staff.azbar.org]
> **Sent:** Friday, May 04, 2018 10:22 AM
> **To:** Roysden, Beau
> **Subject:** Strojnik hearing yesterday
>
> Hi Beau,
>
> Well, I have good news and bad new; the good news is that your testimony was extremely compelling. You make a very good witness, too bad that isn't some type of career; you could make a mint. Bad news is that we are still in limbo; Judge O'Neil says he needs us to write our closing arguments for him before he can make a decision. That is just going to prolong Mr. Strojnik's ability to wreak havoc. I was hoping we would get a ruling within the next week, but now it is open-ended. I will keep you updated as we go along. If anything else concerning Mr. Strojnik comes to your attention, please let me know.

36. SBA's close working relationship with Brnovich was admitted by the SBA in an e-mail from SBA to the SBA board of governors, stating in part, "we are working with the Attorney General's Office, gathering evidence to go forward with the cases that are still pending":

> **From:** Shauna Miller
> **Sent:** Friday, June 29, 2018 8:29 AM
> **To:** Karen Calcagno (Karen.Calcagno@staff.azbar.org)
> **Subject:** FW: Strojnik file no. 16-1309
>
> Please upload to the file.
>
> **From:** Shauna Miller
> **Sent:** Friday, June 29, 2018 8:27 AM
> **To:** 'Mike Wilson' <mwilson@wilsonps.net>
> **Cc:** Maret Vessella <Maret.Vessella@staff.azbar.org>; Amy Rehm <Amy.Rehm@staff.azbar.org>
> **Subject:** Strojnik file no. 16-1309
>
> Hi Mike,
>
> I just received the fax you sent with a copy of the letter to the Board of Governors. I wanted to give you an update on where we are with the Strojnik matters.
>
> Although it may seem like the State Bar is not doing anything, I can tell you that I have been working on the Strojnik case pretty much non-stop for the last several months. On March 6, 2018, the State Bar filed a motion for interim suspension with the Presiding Disciplinary Judge (PDJ) and a hearing should have been held no later than April 10, 2018. It was actually set for April 11, 2018. On April 3, 2018, Mr. Strojnik filed a motion to continue the hearing date due to a medical issue, which the State Bar opposed. The PDJ granted the motion and the hearing was reset for April 18, 2018. On April 11, 2018, Mr. Strojnik filed a motion to dismiss the State Bar's motion for interim suspension. The State Bar filed its response on April 26, 2018. On May 2, 2018, Mr. Strojnik filed his reply. On May 3, 2018, the PDJ heard oral argument on the motion to dismiss, and denied it. The hearing on the motion for interim suspension took place that same day. Assistant Attorney General Beau Roysden testified at the hearing. At the conclusion of the hearing, the PDJ ordered the parties to file their closing arguments. The State Bar's closing argument was due 20 days after we received a transcript from the hearing, and our closing argument was filed on June 14, 2018. Mr. Strojnik has until July 3, 2018 to file his closing argument. The PDJ must then file his decision no later than July 18, 2018. We have requested that Mr. Strojnik be suspended until the pending discipline matters have been resolved.
>
> In the meantime, we are working with the Attorney General's Office, gathering evidence to go forward with the cases that are still pending. Those include matters pending in the district court and state court.
>
> I understand this process seems to take a long time, but we are constrained by the Arizona Supreme Court Rules and need to adhere to the timelines set forth therein. If you ever want an update on the status of your case, please email me and I will give you the information that I am allowed to give pursuant to the rules.
>
> **Shauna Miller, Senior Bar Counsel**
> T: 602.340.7386 F: 602.416.7446

37. SBA and Brnovich, through expressive and verbal speech, identified themselves as holding segregationist views toward the disabled. Indeed, Plaintiff alleges on information and belief that as a direct result of SBA's and Brnovich's (1) retaliation, (2) interference, (3) coercion and/or (4) intimidation, Brnovich Was recognized as a "champion of small business" by the National Federation of Independent Business:

9

**Mark Brnovich**

*Arizona Attorney General*

Mark Brnovich was inaugurated as Arizona's Attorney General in 2015. He previously served as Director of the Arizona Department of Gaming, as an Assistant U.S. Attorney for the District of Arizona, and as an Assistant Attorney General with the state. He has also been a Judge Pro Tem of Maricopa County Superior Court, Deputy Maricopa County Attorney, Commercial Law Judge Advocate in the U.S. Army National Guard, and Director of the Center for Constitutional Government at the Goldwater Institute.

Since his appointment to restoring public confidence in the Office of Arizona's Top Cop, and to recovering some of the nation's most talented public servants for his administration. He argued in the United States Supreme Court regarding case redistricting, was featured on the CBS evening news as Arizona's defender of equal protection, and appeared on Fox's Supreme Indicators in various Hispanic and Wellness.

Most recently, he was honored by the National Federation of Independent Business as a 'Champion of Small Business.'



38. Upon receipt of the above cutout e-mails and other information on or about March 13, 2019, Plaintiff realized that the SBA and Brnovich were working together for the express purpose of halting all ADA related litigation in the State of Arizona, thus violating the express findings and purposes of the ADA encapsulated in 42 U.S.C. 12101:

**42 U.S.C. §12101:**
**(a) Findings**
The Congress finds that—
(1) physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination; others who have a record of a disability or are regarded as having a disability also have been subjected to discrimination;
(2) historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;
(3) discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;
(4) unlike individuals who have experienced discrimination on the basis of race, color, sex, national origin, religion, or age, individuals who have

experienced discrimination on the basis of disability have often had no legal recourse to redress such discrimination;
(5) individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities;
(6) census data, national polls, and other studies have documented that people with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and educationally;
(7) the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals; and
(8) the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

**(b) Purpose**
It is the purpose of this chapter—
(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;
(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and
(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

39. Plaintiff realized that the SBA was persecuting Plaintiff for the primary purpose of affecting Brnovich's (1) retaliation, (2) interference, (3) coercion and/or (4) intimidation of Plaintiff.

40. SBA's and Brnovich's expressive conduct and verbal statements disclose SBA's and Brnovich's opposition with congressional findings and purpose.

41. On the other hand, Plaintiff agrees with congressional findings and purpose.

11

42. SBA's and Brnovich's expressive opposition to congressional findings and purpose is fundamentally inimical to the integration of the disabled individuals into America's social and economic life and to Plaintiff's moral creed.

43. If Plaintiff were to remain a member of the SBA, he would be viewed as having the same expressive opinions of civil rights as the SBA and Brnovich, and would become a subject of scorn and distrust.

44. Plaintiff alleges that the First Amendment, made applicable to the States by the Fourteenth Amendment, forbids abridgment of the freedom of speech "includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U. S. 705, 714 (1977). Plaintiff further believes, and therefore alleges, that the right to eschew association for expressive purposes is likewise protected. *Roberts v. United States Jaycees*, 468 U. S. 609, 623 (1984) ("**Freedom of association . . . plainly presupposes a freedom not to associate**") (emphasis supplied); see *Pacific Gas & Elec., supra*, at 12 As Justice Jackson memorably put it: "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or *force citizens to confess by word or act their faith therein.*" *West Virginia Bd. of Ed. v. Barnette*, 319 U. S. 624, 642 (1943) (emphasis added). By remaining a member of the State Bar, Strojnik is forced to confess to State Bar's faith in discrimination, coercion, threats and intimidation.

45. SBA's and Brnovich's inimical expressions to integration of the disabled community into American economic and social life run counter to Plaintiff's fundamental beliefs of equality for all.

46. Therefore, on March 8, 2019, Plaintiff filed with the Presiding Disciplinary Judge a Motion To Recognize Strojnik's Expressive Dissociation From The Arizona State Bar. The Motion stated, in part:

> The First Amendment, made applicable to the States by the Fourteenth Amendment, forbids abridgment of the freedom of speech "includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U. S. 705, 714 (1977); see *Riley v. National Federation of Blind of N. C., Inc.*, 487 U. S. 781, 796–797 (1988); *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U. S. 539, 559 (1985); *Miami Herald Publishing Co. v. Tornillo*, 418 U. S. 241, 256–257 (1974); accord, *Pacific Gas & Elec. Co. v. Public Util.*

*Comm'n of Cal.*, 475 U. S. 1, 9 (1986) (plurality opinion). The right to eschew association for expressive purposes is likewise protected. *Roberts v. United States Jaycees*, 468 U. S. 609, 623 (1984) ("**Freedom of association . . . plainly presupposes a freedom not to associate**") (emphasis supplied); see *Pacific Gas & Elec., supra*, at 12 As Justice Jackson memorably put it: "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or *force citizens to confess by word or act their faith therein*." *West Virginia Bd. of Ed. v. Barnette*, 319 U. S. 624, 642 (1943) (emphasis added). (Emphasis in original.)

47. The SBA did not respond but, instead, submitted a Motion to Strike on the fundamental bases that Plaintiff's Motion is "redundant", "immaterial" and "impertinent" and further that the Motion is damaging SBA's "credibility and reputation".

48. Plaintiff's Motion was denied by SBA's O'Neil.

49. By forcing Strojnik to remain a member of the SBA, Strojnik is forced to confess to State Bar's faith in discrimination, segregation, coercion, threats and intimidation.

50. Further, SBA and Brnovich have taken the above actions to force Plaintiff to remain a member of the SBA in order to keep him under the oppressive regime of the SBA's oversight, thus preventing him from exercising his own individual 1st Amendment right to redress[3] ADA violations[4].

51. The denial of Plaintiff's motion for dissociation violates Plaintiff's First Amendment right to expressive dissociation.

52. Plaintiff has been damaged by SBA's denial of his right to expressive dissociation.

53. Plaintiff has been damaged by SBA's and Brnovich's (1) retaliation, (2) interference, (3) coercion and/or (4) intimidation of Plaintiff.

54. SBA has been acting intentionally and engaged in aggravated, outrageous and reprehensible misconduct and acted with the intent to deliberately interfere with the rights of Plaintiff to expressly dissociate himself from the SBA whose conduct demonstrates its

---

[3] Plaintiff's First Amendment right to "petition the Government for a redress of grievances" — which includes the filing of lawsuits — and which is "one of 'the most precious of the liberties safeguarded by the Bill of Rights.'" *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 524, 122 S.Ct. 2390, 153 L.Ed.2d 499 (2002) (quoting *United Mine Workers v. Illinois Bar Assn.*, 389 U.S. 217, 222, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967)).

[4] Why else would the SBA deny Plaintiff his right of dissociation?

creed includes segregation, violation of federal law, coercion and intimidation designed "to compel dissenters to conform". *Walker v. City of Lakewood,* 272 F.3d 1114, 1128 (9th Cir. 2001)

**WHEREFORE,** Plaintiff requests relief as follows:

1. For a finding that Plaintiff has the right of 1st Amendment expressive dissociation; and
2. For a finding that the SBA acted in concert with Brnovich to defy Plaintiff's constitutional right of expressive dissociation; and
3. For a finding that SBA denied Plaintiff his 1st Amendment right of expressive dissociation; and
4. For immediate order to the SBA to acknowledge Plaintiff's expressive dissociation; and
5. For damages in an amount to be proven at trial, but in no event less than $750,000.00; and
6. For punitive damages in an amount to be proven at trial but in no event less than $5,000,000.00.
7. For such other and further relief as the Court deems appropriate.

**TRIAL BY JURY IS DEMANDED**

DATED this 29TH day of April 2019

PETER STROJNIK

Peter Strojnik
Plaintiff