# EXHIBIT 3

Peter Strojnik
2375 East Camelback Road Suite 600
Phoenix, Arizona 85016
Telephone: (602) 524-6602
ps@strojnik.com
Twitter: @strojnikpeter

**BEFORE THE PRESIDING DISCIPLINARY JUDGE**

IN THE MATTER OF A **NON**-MEMBER OF THE STATE BAR OF ARIZONA

**PETER STROJNIK**

**Non**-Member

PDJ-2018-9015
No: 18-0615

**MOTION TO RECOGNIZE STROJNIK'S EXPRESSIVE DISSOCIATION FROM THE ARIZONA STATE BAR**

Strojnik brings this motion for the reason that on October 24, 2018, he expressively dissociated himself from the State Bar for the reason that a continued association with said agency "is inconsistent with [his] core principles of morality and fair play". Addendum A.

While the Stat Bar's Mission, Vision, and Core Values[1] lists the assurances that "*[a]ll Arizona residents have equal access to legal services of the highest quality*", "*commitment to advocate causes of justice*", "*diversity*" and "*promotion of justice*", its expressive conduct demonstrate that it its creed includes segregation, violation of federal

---
[1] https://www.azbar.org/aboutus/mission-vision-andcorevalues/

law, coercion and intimidation designed "to compel dissenters to conform". *Walker v. City of Lakewood,* 272 F.3d 1114, 1128 (9th Cir. 2001)

It is Strojnik's 1st Amendment protected opinion that contrary to the lofty goals stated in State Bar's Mission, Vision and Core Values, the State Bar is actually a segregationist organization whose purpose is to thwart all ADA civil rights enforcement action in the State of Arizona. Although the righteousness of Strojnik's opinion is irrelevant to the question of expressive dissociation, his opinion is based in history.

It is by now undisputed that the State Bar has been in a closely knit collusion with the Arizona AG Brnovich, *see, e.g.,* Addendum D. It is also undisputed that Strojnik issued a scathing op-ed piece in the Arizona Republic questioning *Why Does Brnovich Hate the Disabled*:



This op-ed is also protected by the 1st Amendment[2]. However, as a result of this piece, AG Brnovich became highly agitated and teamed up with the State Bar to frustrate *all* civil rights of the Arizona Disability Community.

It is likewise undisputed that Strojnik's activity as a civil rights attorney is federally protected against retaliation, interference, coercion or intimidation, see 42 USC 12203 and 28 CFR § 36.206.

This is plain from State Bar's own e-mail that it considers civil rights litigation as "wreak[ing] havoc" requiring State Bar's action to stop it. In its communications with the AG, State Bar stated:

> From: Shauna Miller [mailto:Shauna.Miller@staff.azbar.org]
> Sent: Friday, May 04, 2018 10:22 AM
> To: Roysden, Beau
> Subject: Strojnik hearing yesterday
>
> Hi Beau,
>
> Well, I have good news and bad new; the good news is that your testimony was extremely compelling. You make a very good witness, too bad that isn't some type of career; you could make a mint. Bad news is that we are still in limbo; Judge O'Neil says he needs us to write our closing arguments for him before he can make a decision. That is just going to prolong Mr. Strojnik's ability to wreak havoc. I was hoping we would get a ruling within the next week, but now it is open-ended. I will keep you updated as we go along. If anything else concerning Mr. Strojnik comes to your attention, please let me know.

Addendum C. See also State Bar's admission that " we are working with the Attorney General's Office, gathering evidence to go forward with the cases that are still pending". Addendum D, Thus, the common goal expressed by and between the State Bar and the AG cannot be disputed.

1. **Strojnik Has The 1st Amendment Right To Dissociate From Any Agency That Prescribes What Shall Be Orthodox In The Matters Of Opinion.**

The First Amendment, made applicable to the States by the Fourteenth Amendment, forbids abridgment of the freedom of speech "includes both the right to speak freely and the right to refrain from speaking at all." *Wooley* v. *Maynard*, 430 U. S. 705, 714 (1977); see *Riley* v. *National Federation of Blind of N. C., Inc.*, 487 U. S. 781, 796–797 (1988); *Harper & Row, Publishers, Inc.* v. *Nation Enterprises*, 471 U. S. 539, 559 (1985); *Miami Herald Publishing Co.* v. *Tornillo*, 418 U. S. 241, 256–257 (1974); accord,

---

[2] It must be noted that AG's function is to promote everyone's civil rights, including the disabled. Instead, AG, and now the State Bar, have concluded that it is more important to "protect" ADA violating public accommodations. After all, "public accommodations" vote and file bar charges. The disabled not so much.

3

*Pacific Gas & Elec. Co.* v. *Public Util. Comm'n of Cal.*, 475 U. S. 1, 9 (1986) (plurality opinion). The right to eschew association for expressive purposes is likewise protected. *Roberts* v. *United States Jaycees*, 468 U. S. 609, 623 (1984) ("**Freedom of association . . . plainly presupposes a freedom not to associate**") (emphasis supplied); see *Pacific Gas & Elec.*, *supra*, at 12 As Justice Jackson memorably put it: "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or *force citizens to confess by word or act their faith therein*." *West Virginia Bd. of Ed.* v. *Barnette*, 319 U. S. 624, 642 (1943) (emphasis added). By remaining a member of the State Bar, Strojnik is forced to confess to State Bar's faith in discrimination, coercion, threats and intimidation.

**2. Is State Bar's Conduct "Speech"?**

*See Texas v. Johnson*, 491 U.S. 397 (1989). (Expressive conduct is speech.) Here, the State Bar admits that filing ADA civil rights actions "wreak havoc" and must be stopped.

**3. Whether The "Opinion" Is Commonly Accepted, Or Even Discriminatory, Is Irrelevant.**

As stated in *Roberts* supra, the "[f]reedom of association . . . plainly presupposes a freedom not to associate"). The concepts of *association* and *dissociation* are equal in principle. Therefore, the case of *Boy Scouts of America et al. v. Dale*, 530 U.S. 640 (2000) is instructive.

In *Dale,* decided on June 28, 2000, the Supreme Court held that held that the constitutional right to freedom of association allowed the Boy Scouts of America (BSA) to exclude a homosexual person from membership in spite of a state law requiring equal treatment of homosexuals in public accommodations. More generally, the court ruled that the BSA may exclude a person from membership when "the presence of that person affects in a significant way the group's ability to advocate public or private viewpoints". The Supreme Court ruled that opposition to homosexuality is part of BSA's "expressive message" and that allowing homosexuals as adult leaders would interfere with that message.

4

It is significant to note that the Court did not turn on whether BSA's creed was popular or even discriminatory. It was simply *its* creed. The Court observed, 530 U.S. 647-650:

> In *Roberts* v. *United States Jaycees,* 468 U. S. 609, 622 (1984), we observed that "implicit in the right to engage in activities protected by the First Amendment" is "a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." This right is crucial in preventing the majority from imposing its views on groups that would rather express other, perhaps unpopular, ideas. See *ibid.* (stating that protection of the right to expressive association is "especially important in preserving political and cultural diversity and in shielding dissident expression from suppression by the majority"). Government actions that may unconstitutionally burden this freedom may take many forms, one of which is "intrusion into the internal structure or affairs of an association" like a "regulation that forces the group to accept members it does not desire." *Id.,* at 623. Forcing a group to accept certain members may impair the ability of the group to express those views, and only those views, that it intends to express. Thus, "[f]reedom of association . . . plainly presupposes a freedom not to associate." *Ibid.*
>
> The forced inclusion of an unwanted person in a group infringes the group's freedom of expressive association if the presence of that person affects in a significant way the group's ability to advocate public or private viewpoints. *New York State Club Assn., Inc.* v. *City of New York,* 487 U. S. 1, 13 (1988). But the freedom of expressive association, like many freedoms, is not absolute. We have held that the freedom could be overridden "by regulations adopted to serve compelling State interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Roberts, supra,* at 623.
>
> To determine whether a group is protected by the First Amendment's expressive associational right, we must determine whether the group engages in "expressive association." The First Amendment's protection of expressive association is not reserved for advocacy groups. But to come within its ambit, a group must engage in some form of expression, whether it be public or private.
>
> Because this is a First Amendment case where the ultimate conclusions of law are virtually inseparable from findings of fact, we are obligated to independently review the factual record to ensure that the state court's judgment does not unlawfully intrude on free expression. See *Hurley, supra,* at 567-568. The record reveals the following. The Boy Scouts is a private, nonprofit organization. According to its mission statement:

5

> "It is the mission of the Boy Scouts of America to serve others by helping to instill values in young people and, in other ways, to prepare them to make ethical choices over their lifetime in achieving their full potential. The values we strive to instill are based on those found in the Scout Oath and Law:
>
> "Scout Oath "On my honor I will do my best "To do my duty to God and my country "and to obey the Scout Law; "To help other people at all times; "To keep myself physically strong, "mentally awake, and morally straight. "Scout Law "A Scout is: "Trustworthy Obedient "Loyal Cheerful "Helpful Thrifty "Friendly Brave "Courteous Clean "Kind Reverent." App. 184.
>
> Thus, the general mission of the Boy Scouts is clear: "[T]o instill values in young people." *Ibid.* The Boy Scouts seeks to instill these values by having its adult leaders spend time with the youth members, instructing and engaging them in activities like camping, archery, and fishing. During the time spent with the youth members, the scoutmasters and assistant scoutmasters inculcate them with the Boy Scouts' values—both expressly and by example. It seems indisputable that an association that seeks to transmit such a system of values engages in expressive activity. See *Roberts, supra,* at 636 (O'Connor, J., concurring) ("Even the training of outdoor survival skills or participation in community service might become expressive when the activity is intended to develop good morals, reverence, patriotism, and a desire for self-improvement").

### 4. Application

As the Boy Scouts in *Dale*, so does Strojnik have a deeply felt moral creed that State Bar's expressions of discrimination is wrong, its retaliation, interference, coercion and intimidation are wrong, and that its violation of federal law is wrong. Strojnik cannot be forced to associate with a group whose expression by conduct is to segregate, discriminate and violate federal law, nor can he allow himself to be linked to any such group.

### 5. Compelling State Interest and Less Restrictive Means

The freedom to dissociate can be overridden "by regulations adopted to serve compelling State interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Roberts, supra,* at 623.

6

It is unclear what "compelling state interest" may be offered where the Strojnik and the State Bar agree on the ultimate end to their relationship: dissociation. If the State Bar truly believes that Strojnik committed some made up ethnical violations, Strojnik's voluntary expressive dissociation will cover *all* of its Missions, Visions and Core Values.

Here, the entire purpose of State Bar's expressive conduct is to infringe on Strojnik's associational freedom. The only means "less restrictive of associational freedom" is dissociation itself.

**CONCLUSION AND PRAYER FOR RELIEF**

Strojnik respectfully request that all involved recognize his First Amendment right to expressive dissociation. To the extent that the State Bar wishes to continue with the current proceeding with the sole goal of noting on the bar website that Strojnik has been *disbarred* and has not *resigned*, then Strojnik will participate in the proceeding for the sole purpose of protecting his good name.

DATED this 18th day of March 2019.

**PETER STROJNIK**

Non-member

Original mailed 18th day of March, 2019 to:

Amanda McQueen
Disciplinary Clerk
Office of the Presiding Disciplinary Judge
1501 W. Washington, Suite 102
Phoenix, Arizona 85007

e-mailed to:

Shauna R. Miller
Senior Bar Counsel
*State Bar of Arizona*
4201 N. 24th Street, Suite 100
Phoenix, AZ 85016-6288
Email: lro@staff.azbar.org

/s/ PS

# ADDENDUM A



**PETER STROJNIK**

2375 East Camelback Road
Suite 600
Phoenix, Arizona 85016
Telephone: 602-524-6602
e-mail ps@strojnik.com

October 24, 2018

Shauna R. Miller, Esq.
Senior Bar Counsel
*State Bar of Arizona*
4201 N. 24th Street, Suite 100
Phoenix, Arizona 85016-6288
*By e-mail only Shauna.Miller@staff.azbar.org*

Re: *Notice of Retirement and Resignation*

Dear Shauna:

I previously advised you that my continuing association with the State Bar is inconsistent with my core principles of morality and fair play and indeed, my health; therefore, I give you formal notice of my immediate retirement and resignation from your organization.

I understand that there are pending issues relating to my now former license which I will deal with in the ordinary course of business. Please do not misunderstand this notice as any admission of any impropriety; any contrary indication on your website will be viewed as defamatory.

You previously advised me that it is impossible to retire or resign from your organization and on that, let me offer this: You can tell a fish that he can't swim, and you can tell me that I can't resign. Bu he can, and I do. On a personal level, I have always found you to be amiable and cordial, and I wish you the very best in all your endeavors.

Please e-mail me a copy of this letter marked "received" and make it a part of my file.

Sincerely,

Peter Strojnik

# Mission, Vision, and Core Values

**Mission Statement**

The State Bar of Arizona exists to serve and protect the public with respect to the provision of legal services and access to justice. Consistent with these goals, the State Bar of Arizona seeks to improve the administration of justice and the competency, ethics, and professionalism of lawyers practicing in Arizona.

**Long-Term Vision**

The State Bar of Arizona (SBA) has a vision of the future that guides our work as an organization. We are committed to create a future Arizona where:

- All Arizona lawyers are part of a supportive and collegial community of professionals exhibiting the highest standards of ethical conduct and technical skill, and sharing a passion for excellence in the practice of law.
- Arizona courts are honored as forums for the fair and prompt handling of legal proceedings by judicial officers of the highest caliber.
- All Arizona residents have equal access to legal services of the highest quality and to a system of justice that affords them prompt resolution of their legal issues.
- The judiciary and the members of the SBA stand ready at all times to anticipate the emerging legal needs of Arizona citizens and to continuously improve the system of justice to meet those needs.

**Core Values**

There are key values that guide the work of the Board of Governors. These values are important to everything we do. We use these values to shape our work and ensure that our approaches are consistent with our results. We list them without reference to priority, because they are of equal value to how we live our professional and personal lives.

**Integrity:** This value represents our commitment to truth in all of its forms and in all of our actions. It is adherence to the spirit as well as to the letter of the law. It is consistency, transparency, and accountability for what we say and what we do, as individuals, as professionals, and as an organization.

**Service to Clients and the Public:** This value represents our commitment to advocate the causes of others with all of our strength, as we would advocate for ourselves in the most important of personal concerns. It is embracing the responsibility to give back to society the knowledge and skills that we acquired with the help of others.

**Diversity:** This value represents our commitment to ensuring that the legal profession and the justice system reflect the community it serves in all of its social, economic, and geographical diversity. It is seeking out members of underrepresented groups to add their strength to the legal profession and to the advancement of justice in all areas of society.

**Professionalism:** This value represents our commitment to each other and to all whom we encounter to act with highest level of sensitivity to the feelings of others. It transcends common courtesy and requires treating all persons within the sphere of our influence with dignity, respect, and unqualified civility.

**Promoting Justice:** This value represents our commitment to ensuring at every risk to ourselves that others have access to the system of justice in which we serve as officers of the court. It is living in our daily lives the oath of allegiance to the Constitutions of the United States and of the State of Arizona by which we are privileged to practice our profession.

**Leadership:** This value represents our commitment to use whatever influence we are privileged to acquire to advance the just causes of those whose influence is less. It is understanding at all times that our actions are observed and may be emulated, and that we are responsible for social behaviors modeled upon our own.

# ADDENDUM C

**From:** Shauna Miller [mailto:Shauna.Miller@staff.azbar.org]
**Sent:** Friday, May 04, 2018 10:22 AM
**To:** Roysden, Beau
**Subject:** Strojnik hearing yesterday

Hi Beau,

Well, I have good news and bad new; the good news is that your testimony was extremely compelling. You make a very good witness, too bad that isn't some type of career; you could make a mint. Bad news is that we are still in limbo; Judge O'Neil says he needs us to write our closing arguments for him before he can make a decision. That is just going to prolong Mr. Strojnik's ability to wreak havoc. I was hoping we would get a ruling within the next week, but now it is open-ended. I will keep you updated as we go along. If anything else concerning Mr. Strojnik comes to your attention, please let me know.

10

# ADDENDUM D

**From:** Shauna Miller
**Sent:** Friday, June 29, 2018 8:29 AM
**To:** Karen Calcagno (Karen.Calcagno@staff.azbar.org)
**Subject:** FW: Strojnik file no. 16-1309

Please upload to the file.

**From:** Shauna Miller
**Sent:** Friday, June 29, 2018 8:27 AM
**To:** 'Mike Wilson' <mwilson@wilsonps.net>
**Cc:** Maret Vessella <Maret.Vessella@staff.azbar.org>; Amy Rehm <Amy.Rehm@staff.azbar.org>
**Subject:** Strojnik file no. 16-1309

Hi Mike,

I just received the fax you sent with a copy of the letter to the Board of Governors. I wanted to give you an update on where we are with the Strojnik matters.

Although it may seem like the State Bar is not doing anything, I can tell you that I have been working on the Strojnik case pretty much non-stop for the last several months. On March 6, 2018, the State Bar filed a motion for interim suspension with the Presiding Disciplinary Judge (PDJ) and a hearing should have been held no later than April 10, 2018. It was actually set for April 11, 2018. On April 3, 2018, Mr. Strojnik filed a motion to continue the hearing date due to a medical issue, which the State Bar opposed. The PDJ granted the motion and the hearing was reset for April 18, 2018. On April 11, 2018, Mr. Strojnik filed a motion to dismiss the State Bar's motion for interim suspension. The State Bar filed its response on April 26, 2018. On May 2, 2018, Mr. Strojnik filed his reply. On May 3, 2018, the PDJ heard oral argument on the motion to dismiss, and denied it. The hearing on the motion for interim suspension took place that same day. Assistant Attorney General Beau Roysden testified at the hearing. At the conclusion of the hearing, the PDJ ordered the parties to file their closing arguments. The State Bar's closing argument was due 20 days after we received a transcript from the hearing, and our closing argument was filed on June 14, 2018. Mr. Strojnik has until July 3, 2018 to file his closing argument. The PDJ must then file his decision no later than July 18, 2018. We have requested that Mr. Strojnik be suspended until the pending discipline matters have been resolved.

In the meantime, we are working with the Attorney General's Office, gathering evidence to go forward with the cases that are still pending. Those include matters pending in the district court and state court.

I understand this process seems to take a long time, but we are constrained by the Arizona Supreme Court Rules and need to adhere to the timelines set forth therein. If you ever want an update on the status of your case, please email me and I will give you the information that I am allowed to give pursuant to the rules.

**Shauna Miller, Senior Bar Counsel**
**T:** 602.340.7386 **F:** 602.416.7446

11