Peter Strojnik (Sr.)
7847 N. Central Ave.
Phoenix, Arizona 85020
Telephone: (602) 524-6602
PS@strojnik.com

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| PETER STROJNIK, (Sr.)<br><br>Plaintiff,<br><br>vs.<br><br>STATE BAR OF ARIZONA, an Arizona nonprofit corporation, SHAUNA MILLER and JOHN DOE MILLER, husband and wife; MARET VESSELLA and JOHN DOE VESSELLA, Husband and Wife; YET UNKNOWN ENTITIES AND PERSONS WHO PARTICIPATED IN THE CONSPIRACY ALLEGED BELOW,<br><br>Defendants. | Case No: 2:19-cv-02704-DJH<br><br>**SECOND AMENDED COMPLAINT (ARCP 15(a)(1)**<br><br>**1. 42 U.S.C. § 1981 et seq Claims for**<br><br>**(a) Violation of Plaintiff's 1st Amendment Right of Dissociation,** and for<br><br>**(b) Violation of Plaintiffs right to be free from (1) retaliation, (2) interference, (3) coercion and/or (4) intimidation pursuant to 42 USC §12203 and 28 CFR §36.206,** and for<br><br>**(c) Conspiracy to Violate Civil Rights**.<br><br>**2. Civil Conspiracy**<br>**3. Aiding and Abetting**<br>**4. Tortious Interference with Contract**<br>**5. Abuse of Process**<br>**6. Intentional Infliction of Emotional Distress** |

1. In this Action Plaintiff seeks remedy against the State Bar of Arizona ("SBA") Shauna Miller and John Doe Miller[1] (Miller), Maret Vessella and John/Jane Doe

[1] Added only in his capacity as spouse of Shauna Miller

Vessella[2] pursuant to 42 US Code §§1981, 1981a, 1983, 1985 and 1988 for conspiracy to violate and the actual violation of Plaintiff's 1st Amendment Right of Dissociation, statutory rights of freedom from (1) retaliation, (2) interference, (3) coercion and/or (4) intimidation pursuant to 42 USC §12203 and 28 CFR §36.206 and for conspiracy to violate Plaintiff's civil rights with non-party AG Mark Brnovich ("Brnovich") and others whose names have not yet been discovered but whose identities will be substituted at close of discovery Plaintiff further alleges that as part of the conspiracy alleged herein, Defendants engaged in tortious civil conspiracy under state law, aiding and abetting Arizona's AG Brnovich ("Brnovich"), East Mesa Chamber of Commerce ("EMCC"), the local firm of Jennings Strauss and Salmon (in particular Lindsay Leavitt and Scott Frerichs) ("JSS") in their effort to prevent Plaintiff from acting as a private attorney general in the prosecution of Plaintiff's and Plaintiff's clients' civil rights. Plaintiff further alleges that Defendants engaged in intentional interference with Plaintiff's contractual rights, abuse of process and intentional infliction of emotional distress, all as more fully developed below.

2. During 2017 through 2019 both Plaintiff and SBA desired a complete dissociation one from the other: Accordingly, on October 24, 2019, Plaintiff advised Defendant of his expressive dissociation from the SBA for the reason that his continued association with the SBA was (and is) inconsistent with his "core principles of morality and fair play". While Plaintiff's expressive dissociation was denied by SBA, SBA contemporaneously attempted to disbar Plaintiff in connection with his civil rights work on behalf of disabled individuals. Plaintiff sought to dissociate himself from the SBA because he finds SBA's expressive conduct incompatible with his fundamental sense of integration, equality, morality and fair play.

3. On May 8, 2019, Plaintiff tendered to SBA a voluntary Consent to Disbarment stating, in part:

> I am aware of the rules of the Supreme Court with respect to discipline, disability, resignation and reinstatement, and I understand that any future application by me for admission or reinstatement as a member of the State Bar of Arizona will be treated as an application by a member who has

---

[2] Added only in his capacity as spouse of Maret Vessella

> been disbarred for professional misconduct, as set forth in the charges made against me. I have previously denied the allegations of any impropriety and enter this Consent as a consequence of my ailing health and desire for peace.

4. In response, SBA entered a Judgment of Disbarment on May 10, 2019, stating in part:

> Under Rule 57(a)(5)(A), any future application for reinstatement "will be treated as an application by a member who has been disbarred for professional misconduct, as set forth in the . . . complaint . . . ."
>
> Mr. Strojnik has been under the force of an interim suspension order. Under Arizona Rule of Supreme Court 61(d), that order of interim suspension continued in force until final disposition of all pending proceedings against him. This judgment is the final disposition of these proceedings and the force of that order is lifted.

5. Despite both parties' identical purpose – absolute and final dissociation one from the other - SBA has denied Plaintiff his 1st Amendment right of expressive dissociation in order to (1) retaliate and coerce Plaintiff to confirm to SBA's expressive segregationist creed, and (2) to intimidate and interfere with Plaintiff's 1st Amendment right to redress his own personal grievances.

6. Defendants never proved and the presiding disciplinary judge William O'Neal never found that Plaintiff violated any ethical rules in connection with his representation of civil rights plaintiffs whom he represented.

7. Despite Plaintiff's disbarment and the setting aside the interim suspension order, Plaintiff continues and will to continue experiencing concrete and continuing injury through severe collateral consequences of the disbarment in lieu of dissociation, including, without limitation, the following:

   a. Effectively prevents Plaintiff for reapplying to the membership with the SBA or this District Court even at a time when the SBA adopts non-discriminatory values; and

   b. Effective foreclosure from applying to State Bar Membership in non-discriminatory jurisdictions, including State and Federal jurisdictions; and

c. The defamatory scorn experienced by attorneys who are branded as "disbarred"; and

d. As an ADA Tester himself, Plaintiff currently experiences and will continue to experience ADA defense counsel refusal to recognition of expressive dissociation in the hope that some judges who fall within "skeptical" and "hostile" categories will be, as some have been, influenced by this false narrative[3].

8. Despite Plaintiff's consent to dissociate himself from the SBA, the case and controversy continues for the reason that Defendant's conduct is capable of repetition yet evading review through its power to disbar those who refuse to conform to its segregationist views.

9. Some of the allegations in this Second Amended Complaint are based on "information and belief" which are "based on factual information that makes the inference of culpability plausible," although a court may consider whether "facts are peculiarly within the possession and control of the defendant." *Menzel v. Scholastic, Inc.*, No. 17-cv-05499-EMC, 2018 U.S. Dist. LEXIS 44833, at *5 (N.D. Cal. 2018)

**JURISDICTION AND VENUE**

10. The actions or omissions that form the basis for the Plaintiffs' claims herein occurred in Maricopa County in the State of Arizona. The Court has jurisdiction over the claims alleged herein pursuant to 28 U.S.C. §§ 1331 and 1343 for claims arising under

---

[3] This category of Judges was referenced by the Honorable Judge Harmon in *Gilkerson v. Chasewood Bank*, 1 F.Supp.3d 570, 596-97 (S.D. Tex., 2014):

> Testers have been an accepted and successful means of enforcing civil rights statutes under the Fair Housing Act and Title VII of the Civil Rights Act of 1964, although a number of courts addressing Title III cases have been skeptical, and even hostile. *See* Lee, *Giving Disabled Testers Access to Federal Courts,* 19 Va. J. Soc. Pol'y & L. at 321–23; Johnson, *Testers Standing up for Title III of the ADA,* 59 Case W. Res. L.Rev. at 689–702. "As a result of both the Attorney General's limited resources and the limited remedies available to Title III plaintiffs, 'most suits are brought by a small number of private plaintiffs who view themselves as champions of the disabled.' " *Betancourt v. Federated Dept. Stores,* 732 F.Supp.2d 693, 701 (W.D.Tex.2010) *Betancourt,* 732 F.Supp.2d at 701, *quoting Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1062 (9th Cir. 2007).

42 U.S.C. §§ 1981, 1981a, 1983, 1985 and 1988. The Court has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. 18. Venue in this Court is appropriate under 28 U.S.C. § 1391(b)(2) because the Defendant is located within this District.

**PARTIES**

11. Plaintiff is a single man currently residing in Maricopa County, Arizona. Plaintiff is an immigrant and a veteran and has been, at all times relevant hereto, legally disabled by virtue of a severe right-sided neural foraminal stenosis with symptoms of femoral neuropathy, prostate cancer and renal cancer, degenerative right knee (now replaced with a prosthetic knee). . He currently suffers from memory loss and other amnesia. Plaintiff is a member of a protected class under the Americans with Disabilities Act.

12. Plaintiff is a former member of the State Bar of Arizona having resigned on October 24, 2018 for the reason that his continued association with said agency "is inconsistent with [his] core principles of morality and fair play":

///

///

///

///

///

///

///

///



PETER STROJNIK

2375 EAST CAMELBACK ROAD
SUITE 600
PHOENIX, ARIZONA 85016
TELEPHONE: 602-524-6602
E-MAIL PS@STROJNIK.COM

October 24, 2018

Shauna R. Miller, Esq.
Senior Bar Counsel
*State Bar of Arizona*
4201 N. 24th Street, Suite 100
Phoenix, Arizona 85016-6288
*By e-mail only Shauna.Miller@staff.azbar.org*

Re: *Notice of Retirement and Resignation*

Dear Shauna:

I previously advised you that my continuing association with the State Bar is inconsistent with my core principles of morality and fair play and indeed, my health; therefore, I give you formal notice of my immediate retirement and resignation from your organization.

I understand that there are pending issues relating to my now former license which I will deal with in the ordinary course of business. Please do not misunderstand this notice as any admission of any impropriety; any contrary indication on your website will be viewed as defamatory.

You previously advised me that it is impossible to retire or resign from your organization and on that, let me offer this: You can tell a fish that he can't swim, and you can tell me that I can't resign. Bu he can, and I do. On a personal level, I have always found you to be amiable and cordial, and I wish you the very best in all your endeavors.

Please e-mail me a copy of this letter marked "received" and make it a part of my file.

Sincerely,

Peter Strojnik

13. Defendant SBA is a private non-profit corporation established in 1933.

14. All acts committed by the SBA through its agents and employees Miller and Vessella were committed by it in its private, non-governmental capacity, non-judicial or

quasi-judicial purposes, but under the color of state law. (Defendants are hereinafter sometimes referred jointly as "SBA" or "Defendants")

**COUNT 1**

U.S.C. § 1981 et seq Claims for (a) Violation of Plaintiff's 1st Amendment Right of Dissociation, (b) Violation of Plaintiffs right to be free from (1) retaliation, (2) interference, (3) coercion and/or (4) intimidation pursuant to 42 USC §12203 and 28 CFR §36.206.

15. For several years Plaintiff provided legal services to the disabled community in Arizona filing 1,700± in the Maricopa Superior Court alone. In *all* 1,700± Plaintiff donated *all* his fees to a non-profit organization for the disabled.

16. Plaintiff's representation of disabled individuals was at all times ethical, moral, legal and proper.

17. When the news about Plaintiff's civil rights work spread through the Phoenix area, numerous media outlets began disseminating false information about the civil rights of the disabled and about the Plaintiff, completely and utterly oblivious to the fact that in the ADA civil rights litigation, the disabled individual and not the offending public accommodation is the victim.

18. As a direct and proximate result of the number of cases filed, upon information and belief, State Bar of Arizona, Brnovich, the East Mesa Chamber of Commerce, the local firm of Jennings Strauss and Salmon (in particular Lindsay Leavitt and Scott Frerichs) ("JSS") conducted at least two clandestine meetings at the offices of the East Mesa Chamber of Commerce ("EMCC") to design and develop a plan to force Plaintiff to cease enforcing disabled individuals' civil rights in the State of Arizona[4].

19. At one of these two clandestine meetings, upon information and belief, JSS suggested that one way of stopping Strojnik from continuing his civil rights actions was for ADA violating individuals to file bar charges against him.

---

[4] Prior to including JSS and EMCC as party defendants, Plaintiff intends to seek leave to conduct appropriate discovery. Further, prior to including Brnovich and the Office of the AG, Plaintiff intends to conduct discovery in order to make the A.R.S. §12-821.01 Notice of Claim and, subsequently, include Brnovich and AG to this suit.

20. Brnovich agreed to intervene in civil rights cases on behalf of the ADA violating public accommodations. At the above referenced meetings, upon information and belief, it was agreed that the cases would be consolidated before Superior Court Judge Talamante. In connection with Judge Talamante, a statement was made, upon information and belief, that "we have a judge".

21. Plaintiff understands and, on that basis alleges, that the statement "we have a judge" reference was made to the Superior Court of Maricopa County Judge Talamante, The statement was meant to communicate that Brnovich, JSS, EMCC "have a judge" who will dismiss the Superior Court Cases.

22. Once agreeing to intervene and thwart the civil rights of Arizona's disabled community, Brnovich sent out criminal investigators to take photos of cars parked at Plaintiff's location. Brnovich began investigating and intimidating Plaintiff and Plaintiff's support staff.

23. Indeed, Brnovich intervened on behalf of ADA violating public accommodations and Judge Talamante, as calculated by the statement "we have a judge", dismissed the Superior Court cases for lack of standing.

24. Judge Talamante never considered the merits of these cases.

25. Judge Talamante's dismissal was appealed.

26. On March 27, 2017, Brnovich filed a Motion for Rule 11 Sanctions, Motion for Non-Rule 11 Sanctions and for evidentiary hearing against Plaintiff.

27. On or about August 9, 2017, the 9th Circuit Court of Appeals issued the now celebrated *CREEC* decision[5] which by implication overruled Judge Talamante's dismissal for lack of standing and positively and absolutely vindicated Plaintiff.

28. At this time Brnovich, defendant State Bar of Arizona and JSS realized – or should have realized – that Judge Talamante's decision was wrong, incorrect and contrary to law and that a continued harassment and intimidation of Plaintiff was contrary to the cause of justice and, further, that ***any continued prosecution of Strojnik "would not advance the***

---

[5] *Civil Rights Education and Enforcement Center v. Hospitality Properties Trust*, 867 F.3d 1093 (9th Cir. 2017)

***cause of justice***". In fact, in a Court filing, Brnovich so admitted on or about November 6, 2017:

> 6. The State withdraws with prejudice its Motion(s) for sanctions pursuant to Rule 11, A.R.S. § 12-349, and the Court's inherent power, or otherwise, and for an award of attorney's fees and costs against Messrs. Ritzenthaler and Strojnik for the reason that a continuing pursuit of sanctions, costs and fees against Messrs. Ritzenthaler and Strojnik would not advance the cause of justice. This withdrawal applies solely to the consolidated cases, and does not preclude the State from acting to protect the public in other litigation.

29. In the meantime, EMCC membership and Brnovich continued filing bar charges against Plaintiff with Defendant the State Bar of Arizona, and the media continued to publish false reports about the ADA.

30. Throughout the relevant period, Arizona's media was paying a close attention to Plaintiff's civil rights work, Brnovich's protection of the ADA violating public accommodations and SBA's persecution of Plaintiff. Most media outlets, and particularly the most vociferous media outfit, Channel 15 and David Biscobing, took a critical view of Plaintiff's civil rights work. Indeed, Biscobing's reporting resulted in death threats against Plaintiff.

31. In order to correct the false impressions created by the media, the SBA and Brnovich, Plaintiff challenged Brnovich to a public debate but Brnovich refused.

32. On or about December 15, 2017, Plaintiff submitted and the Arizona Republic published Plaintiff's opinion piece which explained the discriminatory actions on the part of Brnovich under the headline[6]:

///

///

///

///

[6] https://www.azcentral.com/story/opinion/op-ed/2017/12/15/mark-brnovich-fighting-disabled-business/944342001/



# Why does Brnovich hate the disabled?

Courts have repeatedly slapped down the Arizona attorney general's efforts to fight the rights of the disabled. Why is he still at it?

Your Turn

Why is state Attorney General Mark Brnovich harassing and intimidating disabled individuals and civil rights lawyers? Is it because we are doing the job he should be doing?

In 1990, Congress passed the Americans with Disabilities Act (ADA), which mandated that public and private spaces accommodate persons with disabilities with equal access.

But the legislation did not end discrimination. Instead, we became divided into two warring factions.

On the one hand, the Champions of Small Businesses vigorously resisted the change. On the other, a few committed civil rights lawyers and Champions of the Disabled, many of whom worked pro bono, attempted to enforce the ADA through legal means.

As the 9th Circuit Court of Appeals noted in one of its many pro-equality decisions

See DISABLED, Page 17A

Brnovich did not intervene to enforce the civil rights of the disabled; he intervened to defeat the civil rights of the disabled.

33. The above publication, on information and belief, motivated Brnovich to retaliate for Plaintiff's civil rights work. Plaintiff's exposure of Brnovich as a hater of the disabled and a "champion of small business" (see below) caused Brnovich, SBA, JSS and EMCC to agree, expressly or tacitly, to work closely together to impose maximum damage against Plaintiff.

34. SBA and Brnovich agreed that, despite Plaintiff's vindication by the *CREEC* decision, they would work together to affect Brnovich's, SBA's, JSS's, EMCC's desire to accomplish a disbarment of Plaintiff for the purpose of (1) retaliation, (2) interference, (3) coercion and/or (4) intimidation of Plaintiff.

35. For their part, the Defendants agreed to investigate the bar charges even where, in its face, a bar charge would disclose no violation of ethical rules.

36. For its part of the agreement, Brnovich agreed to (1) conduct independent investigation of Plaintiff and share the results with the SBA, (2) send out criminal investigators to investigate Strojnik and the non-profit organization to whom Strojnik donated ADA litigation proceeds ("AID"), (3) provide support and assistance in SBA's investigations of Strojnik and AID and (4) provide additional assistance to the SBA in any proceeding through testimony of Brnovich's staff.

37. The purpose of the agreements between SBA, Brnovich, JSS and EMCC was for Plaintiff to incur unnecessary attorney's fees and costs, and force Plaintiff to cease his civil rights work through economic extorsion and the threat of disbarment and through the commission of torts alleged below.

38. Plaintiff was not to be economically deterred and, therefore, the SBA filed for interim suspension. At the conclusion of the Interim Suspension Hearing, the presiding judge O'Neill noted, paraphrasing, "all he has heard is that Strojnik filed meritorious ADA cases" implying that there was no basis for interim suspension.

39. Nonetheless, through a methodology and subsequent events currently unclear to Plaintiff, Judge O'Neil entered an order of interim suspension where he stated, in part:

> The evidence and testimony show that Mr. Strojnik is partaking in a scheme that will cause imminent and substantial harm to the public and administration of justice. The additional lawsuits Mr. Strojnik has filed since the State Bar's Motion for Interim Suspension show that his conduct will continue without immediate action by this Court. Any potential damage to Mr. Strojnik is outweighed by the harm to the public and to the profession.

40. The above quote demonstrates SBA's view that it is ADA enforcement, and not ADA violations that are the problem in this State. Not to be lost in the above quote is that the SBA's O'Neil found that filing meritorious ADA enforcement actions constitutes a "*scheme*" and that filing meritorious ADA enforcement actions "*cause imminent and substantial harm to the public and administration of justice*".

41. SBA's individual employees and agents were caught up in the anti-civil rights frenzy. Upon information and belief, they were motivated by group think and embarrassment that one of their members was acting contrary to the desired popular public perception of Arizona lawyers.

42. Upon information and belief, these employees and agents decided to use their power to strip Plaintiff of his right to practice law, thus preventing him from representing civil rights plaintiffs.

43. Subsequently, the SBA filed a formal complaint against Strojnik. The Complaint was based, in part, on SBA's position that filing meritorious civil rights lawsuits is "wreak[ing] havoc" requiring SBA immediate action to stop it. In its communications with the Brnovich, the Miller stated:

> **From:** Shauna Miller [mailto:Shauna.Miller@staff.azbar.org]
> **Sent:** Friday, May 04, 2018 10:22 AM
> **To:** Roysden, Beau
> **Subject:** Strojnik hearing yesterday
>
> Hi Beau,
>
> Well, I have good news and bad new; the good news is that your testimony was extremely compelling. You make a very good witness, too bad that isn't some type of career; you could make a mint. Bad news is that we are still in limbo; Judge O'Neil says he needs us to write our closing arguments for him before he can make a decision. That is just going to prolong Mr. Strojnik's ability to wreak havoc. I was hoping we would get a ruling within the next week, but now it is open-ended. I will keep you updated as we go along. If anything else concerning Mr. Strojnik comes to your attention, please let me know.

44. SBA's close working relationship with Brnovich was admitted by the SBA in an e-mail from SBA to the SBA board of governors, stating in part, "we are working with the Attorney General's Office, gathering evidence to go forward with the cases that are still pending":

///

///

///

///

///

///

**From:** Shauna Miller
**Sent:** Friday, June 29, 2018 8:29 AM
**To:** Karen Calcagno (Karen.Calcagno@staff.azbar.org)
**Subject:** FW: Strojnik file no. 16-1309

Please upload to the file.

**From:** Shauna Miller
**Sent:** Friday, June 29, 2018 8:27 AM
**To:** 'Mike Wilson' <mwilson@wilsonps.net>
**Cc:** Maret Vessella <Maret.Vessella@staff.azbar.org>; Amy Rehm <Amy.Rehm@staff.azbar.org>
**Subject:** Strojnik file no. 16-1309

Hi Mike,

I just received the fax you sent with a copy of the letter to the Board of Governors. I wanted to give you an update on where we are with the Strojnik matters.

Although it may seem like the State Bar is not doing anything, I can tell you that I have been working on the Strojnik case pretty much non-stop for the last several months. On March 6, 2018, the State Bar filed a motion for interim suspension with the Presiding Disciplinary Judge (PDJ) and a hearing should have been held no later than April 10, 2018. It was actually set for April 11, 2018. On April 3, 2018, Mr. Strojnik filed a motion to continue the hearing date due to a medical issue, which the State Bar opposed. The PDJ granted the motion and the hearing was reset for April 18, 2018. On April 11, 2018, Mr. Strojnik filed a motion to dismiss the State Bar's motion for interim suspension. The State Bar filed its response on April 26, 2018. On May 2, 2018, Mr. Strojnik filed his reply. On May 3, 2018, the PDJ heard oral argument on the motion to dismiss, and denied it. The hearing on the motion for interim suspension took place that same day. Assistant Attorney General Beau Roysden testified at the hearing. At the conclusion of the hearing, the PDJ ordered the parties to file their closing arguments. The State Bar's closing argument was due 20 days after we received a transcript from the hearing, and our closing argument was filed on June 14, 2018. Mr. Strojnik has until July 3, 2018 to file his closing argument. The PDJ must then file his decision no later than July 18, 2018. We have requested that Mr. Strojnik be suspended until the pending discipline matters have been resolved.

In the meantime, we are working with the Attorney General's Office, gathering evidence to go forward with the cases that are still pending. Those include matters pending in the district court and state court.

I understand this process seems to take a long time, but we are constrained by the Arizona Supreme Court Rules and need to adhere to the timelines set forth therein. If you ever want an update on the status of your case, please email me and I will give you the information that I am allowed to give pursuant to the rules.

**Shauna Miller, Senior Bar Counsel**
T: 602.340.7386 F: 602.416.7446

45. SBA and Brnovich, through expressive and verbal speech, identified themselves as holding segregationist views toward the disabled. Indeed, Plaintiff alleges on information and belief that as a direct result of SBA's and Brnovich's (1) retaliation, (2) interference, (3) coercion and/or (4) intimidation, Brnovich Was recognized as a "champion of small business" by the National Federation of Independent Business:

**Mark Brnovich**

*Arizona Attorney General*

Mark Brnovich was inaugurated as Arizona's Attorney General in 2015. He previously served as Director of the Arizona Department of Gaming, as an Assistant U.S. Attorney for the District of Arizona, and as an Assistant Attorney General with the state. He has also been a Judge Pro Tem of Maricopa County Superior Court, Deputy Maricopa County Attorney, Command Staff Judge Advocate in the U.S. Army National Guard, and Director of the Center for Constitutional Government at the Goldwater Institute.

Brnovich is known for restoring public confidence in the office of "Arizona's Top Cop" and for assembling some of the nation's most talented public servants for his administration. He argued at the United States Supreme Court regarding voter redistricting, was featured on the CBS talk show 60 Minutes in defense of capital punishment, and appeared on Times Square's billboards to combat human sex trafficking.

Most recently, he was honored by the National Federation of Independent Business as a "Champion of Small Businesses."



46. Upon receipt of the above cutout e-mails and other information on or about March 13, 2019, Plaintiff realized that the SBA and Brnovich were working together for the express purpose of halting all ADA related litigation in the State of Arizona, thus violating the express findings and purposes of the ADA encapsulated in 42 U.S.C. 12101:

> **42 U.S.C. §12101:**
> **(a) Findings**
> The Congress finds that—
> (1) physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination; others who have a record of a disability or are regarded as having a disability also have been subjected to discrimination;
> (2) historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;
> (3) discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;
> (4) unlike individuals who have experienced discrimination on the basis of race, color, sex, national origin, religion, or age, individuals who have experienced discrimination on the basis of disability have often had no legal recourse to redress such discrimination;
> (5) individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory

> effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities;
> (6) census data, national polls, and other studies have documented that people with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and educationally;
> (7) the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals; and
> (8) the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.
> **(b) Purpose**
> It is the purpose of this chapter—
> (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
> (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;
> (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and
> (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

47. Plaintiff realized that the SBA, JSS and EMCC were persecuting Plaintiff for the primary purpose of affecting Brnovich's (1) retaliation, (2) interference, (3) coercion and/or (4) intimidation of Plaintiff.

48. SBA's and Brnovich's expressive conduct and verbal statements disclose Defendants' and Brnovich's opposition with congressional findings and purpose.

49. On the other hand, Plaintiff agrees with congressional findings and purpose.

50. SBA's and Brnovich's expressive opposition to congressional findings and purpose is fundamentally inimical to the integration of the disabled individuals into America's social and economic life and to Plaintiff's moral creed.

51. If Plaintiff were to remain a member of the SBA, he would be viewed as having the same expressive opinions of civil rights as the SBA and Brnovich, and would become a subject of scorn and distrust.

52. Plaintiff alleges that the First Amendment to the Constitution of the United States, made applicable to the States by the Fourteenth Amendment, forbids abridgment of the freedom of speech "includes both the right to speak freely and the right to refrain from speaking at all." *Wooley* v. *Maynard*, 430 U. S. 705, 714 (1977). Plaintiff further believes, and therefore alleges, that the right to eschew association for expressive purposes is likewise protected. *Roberts* v. *United States Jaycees*, 468 U. S. 609, 623 (1984) ("**Freedom of association . . . plainly presupposes a freedom not to associate**") (emphasis supplied); see *Pacific Gas & Elec.*, *supra*, at 12 As Justice Jackson memorably put it: "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or *force citizens to confess by word or act their faith therein*." *West Virginia Bd. of Ed.* v. *Barnette*, 319 U. S. 624, 642 (1943) (emphasis added). By remaining a member of the State Bar, Strojnik is forced to confess to State Bar's faith in discrimination, coercion, threats and intimidation.

53. Defendants' and Brnovich's inimical expressions to integration of the disabled community into American economic and social life run counter to Plaintiff's fundamental beliefs of equality for all.

54. Therefore, on March 8, 2019, Plaintiff filed with the Presiding Disciplinary Judge a Motion To Recognize Strojnik's Expressive Dissociation From The Arizona State Bar. The Motion stated, in part:

> The First Amendment, made applicable to the States by the Fourteenth Amendment, forbids abridgment of the freedom of speech "includes both the right to speak freely and the right to refrain from speaking at all." *Wooley* v. *Maynard*, 430 U. S. 705, 714 (1977); see *Riley* v. *National Federation of Blind of N. C., Inc.*, 487 U. S. 781, 796–797 (1988); *Harper & Row, Publishers, Inc.* v. *Nation Enterprises*, 471 U. S. 539, 559 (1985); *Miami Herald Publishing Co.* v. *Tornillo*, 418 U. S. 241, 256–257 (1974); accord, *Pacific Gas & Elec. Co.* v. *Public Util. Comm'n of Cal.*, 475 U. S. 1, 9 (1986) (plurality opinion). The right to eschew association for expressive purposes is likewise protected. *Roberts* v. *United States Jaycees*, 468 U. S. 609, 623

> (1984) ("**Freedom of association . . . plainly presupposes a freedom not to associate**") (emphasis supplied); see *Pacific Gas & Elec.*, *supra*, at 12 As Justice Jackson memorably put it: "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or *force citizens to confess by word or act their faith therein*." *West Virginia Bd. of Ed.* v. *Barnette*, 319 U. S. 624, 642 (1943) (emphasis added). (Emphasis in original.)

55. The SBA did not respond but, instead, submitted a Motion to Strike on the fundamental bases that Plaintiff's Motion is "redundant", "immaterial" and "impertinent" and further that the Motion is damaging SBA's "credibility and reputation".

56. Plaintiff's Motion was denied by SBA's O'Neil.

57. By forcing Plaintiff to remain a member of the SBA, Strojnik was forced to confess to State Bar's faith in discrimination, segregation, coercion, threats and intimidation.

58. Further, Defendants and Brnovich have taken the above actions to force Plaintiff to remain a member of the SBA in order to keep him under the oppressive regime of the SBA's oversight, thus preventing him from exercising his own individual 1st Amendment right to redress[7] ADA violations.

59. The denial of Plaintiff's motion for dissociation violates Plaintiff's First Amendment right to expressive dissociation.

60. Plaintiff has been damaged by SBA's denial of his right to expressive dissociation.

61. Plaintiff has been damaged by SBA's and Brnovich's (1) retaliation, (2) interference, (3) coercion and/or (4) intimidation of Plaintiff.

62. The controversy has not been rendered moot by Plaintiff's disbarment under the doctrines alleged above, and elsewhere in this Second Amended Complaint.

63. Throughout the relevant times, upon information and belief, SBA has been acting in its purely private motives for purely private purposes and to conform to the group think

---

[7] Plaintiff's First Amendment right to "petition the Government for a redress of grievances" — which includes the filing of lawsuits — and which is "one of `the most precious of the liberties safeguarded by the Bill of Rights.'" *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 524, 122 S.Ct. 2390, 153 L.Ed.2d 499 (2002) (quoting *United Mine Workers v. Illinois Bar Assn.*, 389 U.S. 217, 222, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967)).

that permeated Arizona during the relevant period. At the same time, Defendants acted under the color of state law. Their conduct was intentional and aggravated, outrageous and reprehensible. It's entire purpose was, upon information and belief, designed to "to compel [Plaintiff] to conform" to Arizona's discriminatory group think. *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001).

64. At all times relevant hereto, Defendants acted under the color of state law in order to deprive Plaintiff his rights under the Constitution (1st Amendment), Federal Statute (42 USC 12203) and Regulation (28 CFR 36.206) and otherwise as alleged herein.

65. In order to perpetuate (a) Violation of Plaintiff's 1st Amendment Right of Dissociation, (b) Violation of Plaintiffs right to be free from (1) retaliation, (2) interference, (3) coercion and/or (4) intimidation pursuant to 42 USC §12203 and 28 CFR §36.206 as alleged above, Defendants committed the torts alleged in Counts 2 (Civil Conspiracy), Count 3 (Aiding and Abetting), Count 4 (Interference with Contractual Relationships), Count 5 (Abuse of Process) and Count 6 (Intentional Infliction of Emotional Distress)

**WHEREFORE,** Plaintiff requests relief as follows:

1. For a finding that Plaintiff has the right of 1st Amendment expressive dissociation; and
2. For a finding that the SBA acted in concert with Brnovich to defy Plaintiff's constitutional right of expressive dissociation; and
3. For a finding that SBA denied Plaintiff his 1st Amendment right of expressive dissociation; and
4. For immediate order to the SBA to acknowledge Plaintiff's expressive dissociation; and
5. For damages in an amount to be proven at trial, but in no event less than $750,000.00; and
6. For punitive damages in an amount to be proven at trial but in no event less than $5,000,000.00.

7. For early discovery process to permit Plaintiff to discover facts relative to Brnovich's, JSS's, EMCC's aiding, abetting, providing support to and conspiring with the SBA.
8. For such other and further relief as the Court deems appropriate.

**Count 2**
**Civil Conspiracy**

66. Plaintiff realleges all allegations heretofore set forth.
67. Defendants, Brnovich, EMCC and JSS agreed to accomplish an unlawful purpose, causing damage, all as more fully alleged above and below.
68. Defendants, Brnovich, EMCC and JSS agreed to accomplish a lawful purpose by unlawful means, causing damage, all as more fully described above and below.
69. Defendant, Brnovich, EMCC and JSS agreed and thereupon accomplished underlying torts alleged herein, which they agreed to commit, all as more fully set forth above and below.
70. Plaintiff has been damages by Defendants' civil conspiracy in an amount to be proven at trial, but in no event less than $5,000,000.00.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For a finding of civil conspiracy by Defendants; and
B. For damages in an amount no less than $5,000,000.00; and
C. For costs and fees incurred in this litigation; and
D. For such other and further relief as the Court may deem just and proper.

**Count 3**
**Aiding and Abetting**

71. Plaintiff realleges all allegations heretofore set forth.
72. Defendants knowingly aided and abetted Brnovich, EMCC and JSS in their (1) retaliation, interference, coercion and/or intimidation of Plaintiff as prohibited pursuant to 42 USC §12203 and 28 CFR §36.206, (2) Tortious Interference with Plaintiff's current and potential contracts and (3) Intentional infliction of emotional distress, all as more fully set forth above and below.
73. Plaintiff has been damaged by Defendants' aiding and abetting Brnovich, EMCC and JSS in an amount no less than $5,000,000.00.

WHEREFORE, Plaintiff prays for relief as follows:

A. For a finding that Defendants aided and abetted Brnovich, EMCC and JSS as alleged; and
B. For damages in an amount no less than $5,000,000.00; and
C. For costs and fees incurred; and
D. For such other and further relief as the Court may deem just and proper.

**Count 4**
**Tortious Interference with Contractual Relations**

74. Plaintiff realleges all allegations heretofore set forth.
75. At relevant times, Plaintiff has a contractual relationship with then current clients and a business expectancy of gaining future clients.
76. Defendants intentionally interfered with Plaintiff's current clients and business expectancies by engaging in conduct described above and below.
77. Defendant's motive was to harm Plaintiff as part of the overall conspiratorial strategy between SBA, Brnovich, EMCC and JSS.
78. Plaintiff suffered damages as a result in an amount no less than $5,000.000.00.

WHEREFORE, Plaintiff prays for relief as follows:

A. For a finding of tortious interference with Plaintiff's contracts and business expectancies; and
B. For damages in an amount no less than $5,000,000.00; and
C. For costs and fees incurred; and
D. For such other and further relief as the Court may deem just and proper.

**Count 5**
**Abuse of Process**

79. Plaintiff realleges all allegations heretofore set forth.
80. Defendants used the judicial process for the purpose of perpetrating injustice, that is, they perverted the judicial process primarily to accomplish an improper purpose, all as more fully described above and below.

81. Plaintiff has been damaged as a result of the Defendants' abuse of process in an amount no less than $5,000,000.00.

WHEREFORE, Plaintiff prays for relief as follows:

A. For a finding that Defendants committed abuse of process.; and

B. For damages in an amount no less than $5,000,000.00; and

C. For costs and fees incurred; and

D. For such other and further relief as the Court may deem just and proper.

**Count 6**
**Intentional Infliction of Emotional Distress**

82. Plaintiff realleges all allegations heretofore set forth.

83. Defendants caused severe emotional distress by extreme and outrageous conduct committed with the intent to cause emotional distress or with reckless disregard of the near-certainty that such distress would result, all as more fully alleged above and below.

84. Severe emotional distress resulted causing Plaintiff damage in an amount no less than $5,000,000.00.

WHEREFORE, Plaintiff prays for relief as follows:

A. For a finding that Defendants committed abuse of process.; and

B. For damages in an amount no less than $5,000,000.00; and

C. For costs and fees incurred; and

D. For such other and further relief as the Court may deem just and proper.

**PRAYER FOR PUNITIVE DAMAGES**

85. Plaintiff realleges all allegations heretofore set forth.

86. Defendants' conduct was motivated by the intent to cause harm to Plaintiff and disabled individuals in general and to effectively kill all ADA civil rights litigation in the State of Arizona.

87. Defendants' conduct alleged above demonstrate that Defendants possessed an "evil mind" while engaging in aggravated and outrageous conduct as described above.

88. Punitive damages against Defendants are particularly appropriate to deter Defendant from emulating the alleged conduct in the future.

WHEREFORE, Plaintiff requests relief as follows:

A. For punitive damages sufficient in amount to deter these Defendants and others similarly situated from emulating Defendants' conduct; and

B. For such other and further relief as the Court may find reasonable and proper.

**TRIAL BY JURY IS DEMANDED**

DATED this 22nd day of July 2019.

**PETER STROJNIK**

Peter Strojnik
Plaintiff

Filed and distributed through PACER.