1

2

*Law Offices of*
**BONNETT, FAIRBOURN, FRIEDMAN**
**& BALINT, P.C.**
*2325 East Camelback Road, Suite 300*
*Phoenix, Arizona 85016*
*(602) 274-1100*

3

4

5

6

7

8

*Lisa T. Hauser (#006985)*
*(lhauser@bffb.com)*
*Carrie A. Laliberte (#032556)*
*(claliberte@bffb.com)*
*Attorneys for Defendant*
*State Bar of Arizona*

# UNITED STATES DISTRICT COURT

9

10

## DISTRICT OF ARIZONA

11

12

13

14

15

16

17

18

19

20

Peter Strojnik, (Sr.),

        Plaintiff,

vs.

State Bar of Arizona, an Arizona nonprofit corporation; Shauna Miller and John Doe Miller, husband and wife; Maret Vessella and John Doe Vessella, husband and wife; yet unknown Entities and Persons who participated in the conspiracy alleged below,

        Defendants.

Case No. CV-19-02704-PHX-DJH

**MOTION TO DISMISS SECOND AMENDED COMPLAINT**

21

22

23

24

25

26

27

28

      Defendants State Bar of Arizona("SBA"), Shauna Miller and John Doe Miller ("Miller"), and Maret Vessella and John Doe Vessella ("Vessella") (collectively, "State Bar Defendants" or "SBA Defendants") move to dismiss Plaintiffs' Second Amended Complaint against them under Rule 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure. Their motion is supported by the following Memorandum of Points and Authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION.**

Plaintiff Strojnik's complaint alleges various violations of his rights in connection with disciplinary action taken against him for his conduct in connection with the filing of over 1,700 complaints in state court and over 160 complaints in district court alleging violations of the Americans with Disabilities Act ("ADA") and the Arizonans with Disabilities Act ("AZDA"). [Doc. 42, Ex. A-1 (Request for Judicial Notice) at 4].[1] On July 11, 2018, on motion of the SBA, Arizona's Presiding Disciplinary Judge ("PDJ") ordered Strojnik's immediate, interim suspension from the practice of law upon concluding that Strojnik was "engaging in conduct that has caused or is likely to cause immediate and substantial harm to clients, the public, or the administration of justice." [Doc. 42, Ex. A-1 at 16-17]. The PDJ also ordered the SBA to promptly prosecute the matter. [Doc. 42, Ex. A-1 at 17].

On November 16, 2018, the SBA filed a four-count disciplinary complaint on eighteen bar charges. [Doc. 42, Ex. A-2]. Briefly, the first count involved allegations of false claims for attorney's fees and monetary damages and other misconduct in the state court parking-lot cases. [Doc. 42, Ex. A-2 at 4-18]. The second count alleges misrepresentations made to the state trial court in an effort to evade sanctions in the consolidated parking-lot cases. [Doc. 42, Ex. A-2 at 18-26]. The third count involves a federal parking-lot complaint in *Advocates for Individuals With Disabilities, LLC. v. MidFirst Bank*, 279 F. Supp.3d 891 at 898 (D.Ariz. 2017), in which Judge Wake

---

[1] Accompanying this motion is the SBA's request that this Court take judicial notice of facts concerning Strojnik's disciplinary proceedings that are referenced in his complaint or that form the basis for it. Taking judicial notice of matters of public record does not convert a motion to dismiss into a motion for summary judgment if the facts noticed are not subject to reasonable dispute. *Id.* Just as documents attached to a complaint are not "outside the complaint," so, too, are documents that are not attached but "form[ ] the basis of the plaintiff's claim." *Id.; see also Thomas v. Ally Bank*, 2017 WL 4357770, *1, n. 1 (D. Ariz. Sept. 29, 2017) (in considering a motion to dismiss, the court may also consider evidence where the document is central to or forms the basis of the plaintiffs claim even if it is not attached to the complaint).

commented on Plaintiff's "unethical extortion of unreasonable attorney's fees from defendants" and  federal court cases filed on behalf of Plaintiff Gastelum alleging ADA/AZADA violations related to hotel lodgings and hotel parking lots. [Doc. 42, Ex. A-2 at 26-33]. Lastly, the fourth count involves the complaints of fifteen small business owners who were named defendants in parking-violation cases. [Doc. 42, Ex. A-2 at 33-68].

On March 20, 2019, Strojnik filed a motion to recognize his First Amendment right to dissociation from the SBA. [Doc. 42, Ex. A-3]. The SBA moved to strike his motion on March 28, 2019. [Doc. 42, Ex. A-4]. Strojnik timely replied in support of his motion. [Doc. 42, Ex. A-5]. In an Order filed on April 26, 2019, the PDJ discussed Strojnik's arguments for dissociation and denied his motion as "legally infirm" rather than granting the SBA's motion to strike. [Doc. 42, Ex. A-6]. Shortly thereafter and before a four-day disciplinary hearing was set to begin, Strojnik consented to disbarment on May 8, 2019. [Doc. 42, Ex. A-7]. He acknowledged that, although he previously denied the allegations, he did not desire to contest or defend the charges as a consequence of his "ailing health and desire for peace." [Doc. 42. Ex. A-7 at 1-2]. He also acknowledged that any future application by him for admission or reinstatement in the SBA will be treated "as an application by a member who has been disbarred for professional misconduct." Judgment of disbarment was filed on May 10, 2019. [Doc. 42. Ex. A-8 at 2].

Plaintiff's original complaint [Doc. 1] in this action was filed on April 29, 2019, three days after the PDJ denied his motion to dissociate. Plaintiff amended his complaint on June 4, 2019. [Doc. 14]. After conferring, the SBA moved to dismiss the amended complaint on July 1, 2019. [Doc. 18]. Plaintiff then filed his second amended complaint ("SAC") on July 22, 2019, adding the Miller and Vessella Defendants. [Doc. 22]. As to the State Bar, Miller, and Vesella Defendants, Plaintiff's SAC cannot be cured by further amendment. Its dismissal should be with prejudice.

## II.    ARGUMENT.

### A.    This Court Lacks Jurisdiction Over Any Claims Against the State Bar Because It Is Entitled to Absolute Immunity Under the Eleventh Amendment.

The SBA moves to dismiss Plaintiff's claims against it because the SBA enjoys immunity from suit under the Eleventh Amendment.[2] The Eleventh Amendment to the U.S. Constitution prohibits federal courts from hearing suits brought against an unconsenting state regardless of the relief sought. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Brooks v. Sulphur Springs Valley Elec. Coop.*, 951 F.2d 1050, 1053 (9th Cir. 1991). This jurisdictional bar also precludes federal suits against an arm of the state acting under its control. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993).

The SBA is immune from suit—and this Court's jurisdiction—under the Eleventh Amendment. *See Gilchrist v. Arizona Supreme Court*, 10 Fed.Appx. 468, 470 (9th Cir.2001) ("The district court properly dismissed Gilchrist's claims for monetary damages against the Arizona Supreme Court, its chief judge, and the state bar association because they are entitled to immunity under the Eleventh Amendment."); *Camboni v. Brnovich*, No. CV-15-02538-PHX-JAT, 2016 WL 4271850, at *5 (D.Ariz., Aug. 15, 2016) (finding the Arizona State Bar immune from suit under the Eleventh Amendment). The Amendment has been extended to preclude suits in federal court brought against a state by its own citizens. *Hans v. Louisiana*, 134 U.S. 1, 10 S. Ct. 504, 33 L. Ed. 842 (1890). "The Eleventh Amendment bars suits which seek either damages or injunctive relief against . . . an 'arm of the state,' its instrumentalities, or its agencies." *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir.1994) (citing *Durning v. Citibank, N.A.*, 950 F.2d 1419, 1422-1423 (9th Cir. 1991)).

---

[2] Where the defendant, as here, raises a facial—as opposed to factual—challenge to the Court's subject matter jurisdiction, the Court applies the Rule 12(b)(6) legal standard to a motion to dismiss on the grounds of sovereign immunity. *Duffy v. Los Banos Unified Sch. Dist.*, 2015 WL 6881119, at *3 (E.D.Cal. Oct. 28, 2015) (citing *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)).

In determining whether an entity is an "arm of the state," federal courts look to "the way state law treats the entity." *Mitchell v. Los Angeles Community College District*, 861 F.2d 198, 201 (9th Cir. 1988). Federal courts assess the extent to which the entity "derives its power from the State and is ultimately regulated by the State." *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir.1994); *see also Greater Los Angeles Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1110 (9th Cir. 1987) ("We conclude that a suit against the Superior Court is a suit against the State, barred by the eleventh amendment.").

The Rules of the Supreme Court of Arizona ("Arizona Rules") direct that "[t]he Supreme Court of Arizona maintains under its direction and control a corporate organization known as the State Bar of Arizona." Rule 32(a), Ariz. R. Sup.Ct. In addition, "[t]his Court empowers the State Bar of Arizona, under the Court's supervision, to: . . . [*inter alia*] assist this Court with the regulation and discipline of persons engaged in the practice of law; foster on the part of those engaged in the practice of law ideals of integrity, learning, competence, public service, and high standards of conduct; serve the professional needs of its members; and encourage practices that uphold the honor and dignity of the legal profession[.]" Rule 32(a)(2)(D), Ariz. R. Sup.Ct. In conducting disciplinary proceedings, the Arizona State Bar exercises police or regulatory power (1) "to protect the public, the profession, and the administration of justice," and (2) "to deter other lawyers from improper conduct." *In re Blankenburg*, 143 Ariz. 365, 367 (1984) (e*n banc*).

The Arizona Supreme Court has exclusive jurisdiction to regulate admission to the practice of the law and the discipline of those admitted. *In re Riley*, 142 Ariz. 604, 607-08 (1984). The SBA is an instrumentality of the Arizona Supreme Court for the purpose of conducting disciplinary proceedings. *Id.* Thus, the Arizona State Bar is an "arm" of Arizona. Claims against the SBA are claims "against the State." *Bates v. State Bar of Arizona*, 433 U.S. 350, 361 (1977).

In this Circuit, state bars have been entitled to Eleventh Amendment immunity. *See Hass v. Oregon State Bar*, 883 F.2d 1453, 1461 (9th Cir.1989) ("The Arizona State Bar like the Oregon State Bar, was an instrumentality of the state supreme court . . ."); *see also Hirsh*

*v. Justices of the Supreme Court of the State of Cal.*, 67 F.3d 708, 715 (9th Cir.1995); *Lupert v. California State Bar,* 761 F.2d 1325, 1327 (9th Cir.1985); *Ginter v. State Bar of Nevada*, 625 F.2d 829, 830 (9th Cir. 1980). Other Circuits are in accord. *See, e.g.*, *Lewis v. Louisiana State Bar Ass'n*, 792 F.2d 493, 497 (5th Cir.1986); *Bishop v. State Bar of Texas*, 791 F.2d 435, 438 (5th Cir.1986); *Crosetto v. State Bar of Wisconsin,* 12 F.3d 1396, 1401-02 (7th Cir.1993); *Kaimowitz v. The Florida Bar*, 996 F.2d 1151, 1155 (11th Cir.1993).

Although Strojnik's SAC alleges that the SBA acted "in a private, non-governmental capacity" [Doc. 22, ¶ 14], this is an incorrect conclusion of law. As discussed above, the SBA does not act in a private capacity with respect to attorney discipline. The State Bar of Arizona is an arm of the state; it is entitled to Eleventh Amendment immunity protection from this suit. Accordingly, Plaintiff's SAC against the SBA must be dismissed.

**B.     This Court Lacks Subject Matter Jurisdiction of Plaintiff's Claims Attacking His Disbarment.**

In *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.E.2d 2016 (1983), the Supreme Court established what is now referred to as the *Feldman* rule that federal courts do not have subject matter jurisdiction over:

> [C]hallenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional.

*Id*. at 486, 103 S.Ct. at 1317. In contrast, "general challenges to state bar rules, promulgated by state courts in non-judicial proceedings, which do not require review of a final state-court judgment in a particular case," are not subject to the *Feldman* rule because they do not call upon a lower federal court to review final judgments or decrees of a state's highest court. Such is the exclusive jurisdiction of the Supreme Court of the United States. *See* 28 U.S.C. § 1257; *see also Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415, 416, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923) (federal district courts lack jurisdiction to entertain collateral attacks on state court judgments). The rule is often called the *Rooker–Feldman* Doctrine. Plaintiff's claims are squarely within the *Rooker–Feldman* Doctrine.

**1.      Plaintiff's collateral attack on his disbarment.**

By asking this Court to find that he "has the right of 1ˢᵗ Amendment expressive dissociation," to find that the SBA denied that right, and for an "immediate order to the SBA to acknowledge Plaintiff's expressive dissociation," Strojnik makes a collateral attack on the disciplinary process. Plaintiff had the opportunity to raise this issue before the PDJ and did so by a motion in which he made all of the arguments he makes before this Court that: (1) he has a First Amendment right to dissociate from the SBA; (2) he exercised his right to eschew association with the SBA to avoid being forced to confess to the "State Bar's faith in discrimination, coercion, threats, and intimidation;" (3) that forcing him to go through the disciplinary process violates his right to dissociate; and (4) that his prosecution for disciplinary violations is "retaliation, interference, coercion or intimidation" under 42 U.S.S. § 12203 and 28 C.F.R. § 36.206. [Doc. 42, Ex. A-3 (motion)]; [Doc. 42, Ex. A-5 (reply)]; [Doc. 42, Ex. A-6 (Order)]; [Doc. 22 (SAC), ¶¶ 51-61].

Having raised and lost these issues in the context of the disciplinary process, Strojnik immediately brought an action to have this Court declare the existence of his right to dissociate from the SBA (already rejected by the PDJ), find that the SBA denied his exercise of this right, and "order the SBA to acknowledge Plaintiff's expressive dissociation." [Doc. 14 at 17; now Doc. 22 at 18]. Plaintiff does not explain the manner in which he would have the SBA acknowledge this right now that he has been disbarred. But given his allegations of continuing injury from the ongoing, negative effects of his disbarment [Doc. 22, ¶ 7], it appears that he may be seeking some relief from disbarment by having the SBA ordered to treat him as having resigned rather than disbarred. As noted by the PDJ, resignation in lieu of disbarment is not permitted by Arizona Supreme Court Rule 32(c)(11)(B), because Strojnik attempted to resign after the SBA received disciplinary charges against him.

Thus, this Court lacks subject matter jurisdiction of Strojnik's claims and the relief he seeks, because it is an attack on the underlying disciplinary action and a violation of *Rooker–Feldman. See Paulson v. Oregon State Bar*, 2013 WL 2659605, *3 (D.Ore. Jun. 4, 2013) (disbarred attorneys' allegations that the Oregon State Bar engaged in

unconstitutional actions during attorney discipline and seeking damages for denial of the ability to earn a living is a collateral attack on a state court judgment and a *Rooker-Feldman* violation).

Had Strojnik contested his disbarment, he could have appealed the decision of the hearing panel to the Arizona Supreme Court. Rule 59(a), Ariz. R. Sup. Ct. and appealed that decision to the Supreme Court of the United States. Instead, the PDJ was required to enter a judgment disbarring Plaintiff after his consent to disbarment was accepted. Rule 57, Ariz. R. Sup. Ct. Thus, Plaintiff's judgment of disbarment was issued under the authority of the Arizona Supreme Court and, for purposes of application of the *Rooker–Feldman* Doctrine, should be treated as a judgment or decree of Arizona's highest court.

Consenting to disbarment and its resulting lack of appellate review and final decision by the state supreme court should not entitle Strojnik to have his claims reviewed by a federal district court simply because he chose to stop the disciplinary process short of the supreme court. In *Thomas v. Kadish*, 748 F.2d 276 (5th Cir.1984), the Fifth Circuit concluded that an applicant for admission could not avoid *Feldman* by not seeking review of the Texas Board of Law Examiners' denial of admission. "By failing to raise his claims in state court a plaintiff may forfeit his right to obtain review of the state court decision in any federal court." 748 F. 2d at 282 (quoting *Feldman*, 460 U.S. at 483 n. 16).

At one point, Strojnik appears to make a general, constitutional attack—and attempts to avoid an obvious mootness problem—by seeking prospective relief for "those who refuse to conform to [the SBA's] segregationist views." [Doc. 22, ¶ 8]. But he has no standing to do so now that he has been disbarred. In *Paulson v. Oregon State Bar*, 609 Fed.Appx. 511 (9th Cir.2015), Paulson challenged the constitutionality of the Oregon State Bar's disciplinary proceedings. The district court properly dismissed his requests for declaratory and injunctive relief for lack of standing. Because Paulson was no longer a member of the Oregon State Bar he could not show the requisite concrete and particularized harm, and sufficient likelihood that he would again be harmed in a similar way, needed to have standing to bring his prospective claims. *Id.* at 512.

Strojnik's claims are either a collateral attack on his disbarment or inextricably intertwined with his state court judgment. In either event, this Court does not have subject matter jurisdiction.

**2.     All of Plaintiff's state law claims would require this Court to review the disciplinary proceedings in his case.**

Plaintiff's state law claims, however cast, seek damages for harms he alleges to have suffered as a result of acts related to the conduct of the disciplinary process. Each claim would require this Court to review the disciplinary process, including the investigative phase, to evaluate the conduct engaged in by the State Bar Defendants, which is prohibited.

His claims that the use of the disciplinary process had an unlawful or improper purpose (his civil conspiracy, aiding and abetting, and abuse of process claims) or were improperly motivated to harm him (his tortious interference with contractual relations and intentional infliction of emotional distress claims) are "inextricably intertwined" with his Judgment of Disbarment. *See Musselwhite v. State Bar of Texas*, 32 F. 3d 942, 946 (5th Cir.1994) (no federal jurisdiction as to claims inextricably intertwined with state court judgment of reprimand). In *Musslewhite*, claims that the disciplinary proceedings were taken in bad faith or used to deliberately persecute the plaintiff could not be heard in federal court because it would require a "collateral examination of the state court judgment [and] [t]his we cannot do." *Id.* at 947. These claims are within the scope of *Rooker-Feldman*.

Plaintiff's damage claims are precluded under the *Rooker-Feldman* doctrine even though Plaintiff is seeking damages for actions preceding the disbarment and not the disbarment itself. The Seventh Circuit rejected such an argument in *Johnson v. Supreme Court of Illinois*, 165 F.3d 1140 (7th Cir. 1999). It concluded that the only damages claimed were attributable to the disbarment and the challenged actions could have been addressed in the disbarment proceedings. *Id.* at 1142. All of Plaintiff's damage claims are wrapped up in the proceedings leading up to and including his disbarment. As a result, this Court lacks subject matter jurisdiction.

**C.      Plaintiff's Claims for Declaratory and Injunctive-Type Relief Are Moot.**

Article III limits this Court's jurisdiction to actual cases and controversies. *Hamamoto v. Ige*, 881 F.3d 719 at 722 (9th Cir.2019). One exception is for controversies that are "capable of repetition, yet evading review." *Id.* Strojnik's SAC alleges that "[d]espite Plaintiff's consent to dissociate himself from the SBA, the case and controversy continues for the reason that Defendant's conduct is capable of repetition yet evading review through its power to disbar those who refuse to conform to its segregationist views." [Doc. 14, ¶ 7].

The exception does not apply here.

> That exception applies only in exceptional situations, where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.

*Id.* (quoting *Kingdomware Techs., Inc. v. United States*, ⸺ U.S. ⸺, 136 S.Ct. 1969, 1976 (2016)). Strojnik's consent to disbarment after filing his original complaint and before filing his SAC defeats the second part of this test. As a disbarred attorney, there is no reasonable expectation that *he* will be subject to disbarment again.

**C.      The Miller and Vessella Defendants Have Absolute Immunity.**

Defendants Miller (Senior Bar Counsel) and Vessella (Chief Bar Counsel) are state officials sued in their personal capacities. They are "persons" within the meaning of § 1983 when sued for damages for actions taken in their individual capacities. *Hafer v. Melo*, 502 U.S. 21, 31 (1991). However, both enjoy absolute immunity for the conduct alleged by Plaintiff in his state law *and* § 1981, *et seq.*, claims.

Rule 48(l), Ariz. R. Sup.Ct, provides that "state bar staff … shall be immune from suit for any conduct in the course of their official duties." Their conduct in investigating and prosecuting discipline against Plaintiff is immune under this rule as to Plaintiff's state law claims.

They are immune as to his civil rights claims as well. The Supreme Court has

considered immunities in the context of § 1983 actions on numerous occasions. Most public officials are entitled only to qualified immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982); *Butz v. Economou*, 438 U.S. 478, 508 (1978). But the Supreme Court has refused to abrogate absolute immunities that were well established in 1871 absent some clear indication that Congress intended to abolish them. *See Buckley*, 509 U.S. at 268 ("Certain immunities were so well established in 1871, when § 1983 was enacted, that 'we presume that Congress would have specifically so provided had it wished to abolish' them.").

Accordingly, the Supreme Court has held that prosecutors have absolute immunity in § 1983 suits for damages for acts committed in initiating a prosecution and in presenting the State's case. *Imbler v. Pachtman*, 424 U.S. 409, 427, 431 (1976). A prosecutor's immunity is quasi-judicial. *Hirsh v. Justices of Supreme Court of State of California*, 67 F.3d 708, 715 (9th Cir.1995) (finding Bar Court judges and prosecutors immune from damages); citing *Clark v. Washington,* 366 F.2d 678, 681 (9th Cir.1966) (holding that Bar Association is an arm of the Washington Supreme Court in connection with disciplinary proceedings and an integral part of the judicial process such that Bar Association prosecuting attorney was entitled to immunity from suit under the Civil Rights Act for his prosecutorial functions). In *Imbler*, the Supreme Court confirmed absolute immunity for prosecutors, stating:

> If a prosecutor had only a qualified immunity, the threat of § 1983 suits would undermine performance of his duties no less than would the threat of common-law suits for malicious prosecution.... The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages.

424 U.S. at 424-25.

Prosecutors have absolute immunity only for activities "intimately associated with the judicial phase of the criminal process." *Imbler.* 424 U.S. at 430. They are entitled to this immunity so long as they perform functions similar to judges and prosecutors in a setting

like that of a court. *Butz v. Economou*, 438 U.S. 478, 511-17 (1978). In finding Bar Court judges and prosecutors immune from damages in federal court, the Ninth Circuit noted that "[t]he factors cited by the *Butz* Court apply equally to the personnel of the Bar Court— hearings are adversarial, errors are correctable on appeal, the judges make factual findings and perform other adjudicatory functions, and Bar Court decisions are controversial enough to stimulate harassing damage actions against the adjudicators, as this case illustrates." *Hirsh*, 67 F.3d at 715.

State Bar officials charged with the duties of investigating, preparing, and prosecuting cases involving *attorney discipline* have historically enjoyed absolute immunity from damage claims for such functions. *See Clark v. State of Washington* 366 F.2d 678, 681 (9th Cir.1966), cert. den., 375 U.S. 987; *Simons v. Bellinger*, 643 F.2d 774, 777–786 (D.C. Cir.1980); *Slavin v. Curry*, 574 F.2d 1256, 1266 (5th Cir.1978), mod. in part on other grounds 583 F.2d 779 (1978), overruled in part on other grounds, *Sparks v. Duval County Ranch Co. Inc.* 604 F.2d 976, 978 (1979); *Ginger v. Wayne County Circuit Court*, 372 F.2d 621, 625 (6th Cir.1967), cert. den., 387 U.S. 935; *Kissell v. Breskow* 579 F.2d 425, 430 (7th Cir.1978); *Verner v. State of Colo.,* 533 F.Supp. 1109, 1115 (D.Colo. 1982), affd. 716 F.2d 1352 (10th Cir.1983), cert. denied 466 U.S. 90 (1984). They have enjoyed absolute immunity as "arms of the courts." *Richardson v. Koshiba,* 693 F.2d 911, 914 (9th Cir. 1982). The immunity attaches because of the functions performed: prosecuting and adjudicating claims of professional misconduct as an "integral part of the judicial process." *Simons v. Bellinger*, 643 F.2d at 777–786; *Clark v. State of Washington,* 366 F.2d at 681; *Verner v. State of Colo.,* 533 F.Supp. at 1115.

All of Plaintiffs' claims against Defendants Miller and Vessella fall squarely within the prosecutorial function of the State Bar, an integral part of the judicial process, and must be dismissed on the basis of their absolute immunity.

**D.** **Plaintiff Fails To State Any Claims For Relief.**

Although all of Plaintiff's claims should be dismissed for the reasons already stated, Defendants briefly addresses Strojnik's failure to state any claims for relief.

**1.    Plaintiff's civil rights claims.**

Count 1 of Strojnik's SAC is a rambling claim under 42 U.S.C. §§ 1981, 1981(a), 1983, 1985, and 1988 for (1) violation of his First Amendment right of dissociation; (2) violation of his right to be free from retaliation, interference, coercion, and intimidation pursuant to 42 U.S.C. § 12203 and 28 C.F.R. §36.206; and (3) for conspiracy to violate his civil rights. Although the SBA is immune from suit and this Court lacks subject matter jurisdiction over these claims, as discussed above, the SBA briefly addresses Strojnik's failure to state any claim for relief under these sections, with the exception of the § 1988, which relates to awarding attorney's fees.

*a.    42 U.S.C. § 1981.*

Plaintiff does not articulate how he believes this section applies. To state a claim under § 1981, a white plaintiff must allege that he actions taken against them are somehow related to the rights owed to non-white citizens and protected under this section. *Zynger v. Department of Homeland Sec.*, 615 F.Supp.2d 50, 55 (E.D.N.Y.2009), affirmed 370 Fed.Appx. 253 (2nd Cir.2010). Plaintiff has not pled the allegations necessary for a § 1981 claim.

*b.    42 U.S.C. § 1981a.*

This statute, 42 U.S.C. §1981a, is a compensatory and punitive damages provision in employment discrimination claims and not an independent basis for liability. *Shields v. Frontier Technology, LLC*, 2012 WL 12538963, *3, n. 2 (D.Ariz. Jan. 30, 2012); *see also King v. Fulton Cnty of Ga*, 2009 WL 1322341 at *1 (N.D. Ga. May 11, 2009) ("Because § 1981a does not provide an independent cause of action, Plaintiff cannot maintain a separate claim under § 1981a."). Further, Strojnik does not clearly plead any of the unlawful, intentional discrimination claims entitling him to damages under § 1981a. 42 U.S.C. §1981a(a)(1), (2).

His reference to § 1981a is made in in the same paragraph in which he indicates that he is seeking a remedy for violation of his right to be free from retaliation. [Doc. 22, ¶ 1]. For purposes of this motion, the SBA Defendants presume his claim is for retaliation under

the ADA. A prima facie retaliation claim under Title VII and the ADA are the same. *Shields* at *4, n. 4. "'In order to establish a prima facie case of retaliation, [a plaintiff] must demonstrate that (1) [he] had engaged in protected activity; (2) [he] was thereafter subjected by [his] employer to an adverse employment action; and (3) a causal link existed between the protected activity and the adverse employment action.'" *Shields* at *4 (quoting *Porter v. Cal. Dep't of Corr.,* 419 F.3d 885, 894 (9th Cir. 2005)). First, the SBA's relationship with its member attorneys is not that of employer within the meaning of § 1981a. Second, it appears that Strojnik believes that filing ADA cases exempts him from the rules of ethics or the consequences of their violation. If filing ADA cases is the protected activity on which he bases his claim for damages and discipline for violation of the rules of ethics is the claimed retaliation, his claim fails.

c.      *42 U.S.C. § 1983.*

"Traditionally, the requirements for relief under [§] 1983 have been articulated as: (1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Plaintiffs are required to "plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986); *see also Pistor v. Garcia*, 791 F. 3d 1104, 1114 (9th Cir. 2015); *Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *WMX Techs., Inc. v. Miller*, 197 F.3d 367, 372 (9th Cir. 1999) (en banc); *Ortez v. Wash. Cty., Or.*, 88 F.3d 804, 810 (9th Cir. 1996).

Strojnik has failed to plead a § 1983 claim against the SBA. In addition to being immune from suit under the Eleventh Amendment, a governmental agency that is an arm of the state is not a person for purposes of § 1983. *See Howlett v. Rose*, 496 U.S. 356, 365 (1990); *Flynt v. Dennison*, 488 F. 3d 816, 824-25 (9th Cir.2007). Thus, the State Bar cannot be sued for any form of relief under § 1983.

1
      ***d.     42 U.S.C. § 1985.***

2
          Section 1985 refers to a conspiracy intending to interfere with an individual's civil

3
rights. Plaintiff merely cites § 1985 as a basis for his SAC, but does not identify which of

4
its provisions he invokes.  For purposes of this motion, we assume he seeks to advance a

5
conspiracy claim under §1985(2) or (3), which are similarly pled.

6
          The second part of the § 1985(2) "applies to conspiracies to obstruct the course of

7
justice in state courts" where conspirators have the intent to deny equal protection. *Kush v.*

8
*Rutledge,* 460 U.S. 719, 725 (1983). It requires allegations of racial or class-based

9
discriminatory intent by the conspirators. *Chavis v. Clayton County Sch. Bd.,* 300 F.3d

10
1288, 1292 (11th Cir.2002). Similarly, under § 1985(3), "there must be some racial, or

11
perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators'

12
action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *see also RK Ventures, Inc. v. City*

13
*of Seattle*, 307 F.3d 1045, 1056 (9th Cir. 2002); *Butler v. Elle*, 281 F.3d 1014, 1028 (9th

14
Cir. 2002) (per curiam); *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992).

15
          Strojnik's SAC fails to make such allegations. Any suggestion that subjecting him

16
to discipline because of discriminatory animus against the disabled is patently frivolous.

17
**3.     Civil conspiracy.**

18
          In Count 2, Plaintiff alleges that the State Bar conspired with the other Defendants

19
to both accomplish an unlawful purpose and a lawful purpose by unlawful means. [Doc. 22

20
at 19]. Arizona does not recognize a cause of action for civil conspiracy. *Estate of*

21
*Hernandez by Hernandez-Wheeler v. Flavio*, 187 Ariz. 506, 510, 930 P.2d 1309, 1313

22
(1997) (en banc).  The action is one for damages arising out of the acts committed pursuant

23
to the conspiracy, and damage for which recovery may be had in such civil action is not the

24
conspiracy itself but the injury to the plaintiff produced by specific overt acts. *Tovrea Land*

25
*& Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 131, 412 P.2d 47, 63 (1966); *see also In re*

26
*Mortg. Elec. Registration Sys. (MERS) Litig.*, 744 F. Supp. 2d 1018, 1027 (D. Ariz. 2010)

27
("Civil conspiracy is not an independent cause of action—it must arise from some

28
underlying wrong.") (citing *Paul Steelman Ltd. V. HKS, Inc.*, 2007 WL 295610, at *3 (D.

1  Nev. Jan. 26, 2007)). In this case, Plaintiff's other tort claims are alleged to be the object of

2  the conspiracy.

3      If Plaintiff's tort claims fail, so does his conspiracy claim. Without a *valid* underlying

4  cause of action, Plaintiff's civil conspiracy claim must be dismissed. *In re MERS*, 744 F.

5  Supp. 2d at 1027 (claim for civil conspiracy fails if underlying cause of action fails) (citing

6  *Grisham v. Philip Morris USA*, 403 F.3d 631, 635 (9th Cir. 2000)).

7  **4.    Aiding and abetting.**

8      In order to state an aiding and abetting claim against the State Bar Defendants,

9  Plaintiff must allege that Defendants "[did] a tortious act in concert with [another] or

10 pursuant to a common design with him[;]" that the State Bar Defendants "kn[ew] that the

11 act [it was] aiding [was] a tort[;]" and that it "substantially aid[ed] its commission." *Dube*

12 *v. Likins*, 216 Ariz. 406 (Ct. App. 2007) (internal citations omitted); see also *Wells Fargo*

13 *Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*,

14 201 Ariz. 474, 485 (2002) (en banc). Plaintiff has not alleged any of these elements and this

15 claim against the State Bar should be dismissed.

16 **5.    Tortious interference with contractual relations.**

17     Plaintiff claims that the State Bar Defendants interfered with his contractual

18 relationships with clients. Liability for tortious interference with a contract requires that the

19 defendant's actions be improper as to motive or means. *ABCDW, LLC v. Banning*, 241 Ariz.

20 427, 437 (2016). Impropriety "generally is determined by weighing the societal importance

21 of the interest the defendant seeks to advance against the interest invaded." *Id.* In the context

22 of the disciplinary process and its purpose to protect the public and the administration of

23 justice, the resulting interference with Plaintiff's contractual client relationships is not

24 improper. *See In re Alexander*, 232 Ariz. 1, ¶63 (2013) (purpose of attorney discipline); *see*

25 *also In re Hiser,* 168 Ariz. 359, 362-63, (1991); *In re Pappas,* 159 Ariz. 516, 526 (1988).

26 This claim should be dismissed.

27

28

**6.    Abuse of process.**

Plaintiff's abuse of process claim appears to allege that the State Bar Defendants used the disciplinary process to perpetrate injustice and accomplish the improper purpose of his disbarment. [Doc. 22 at 20]. But "[t]here is no abuse of process where a litigant avails him/herself of a remedy designed for the precise problem the litigant seeks to remedy." *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 415 (9th Cir. 1985). The State Bar Defendants use of the disciplinary process was for disciplinary purposes and resulted in Plaintiff's disbarment by consent. This conduct does not constitute an abuse of process as a matter of law.

**7.    Intentional infliction of emotional distress.**

The elements of intentional infliction of emotion distress (IIED) are: (1) extreme and outrageous conduct by defendant; (2) that the conduct was either intentional or reckless; and (3) it caused plaintiff to suffer severe emotional distress. *Ford v. Revlon*, 153 Ariz. 38 (1987); *Wallace v. Casa Grande Union High School Dist.*, 184 Ariz. 419 (App.1995); *Mintz v. Bell Atlantic Sys. Leasing Int'l, Inc.*, 183 Ariz. 550 (App.1995); *Nelson v. Phoenix Resort Corp.*, 181 Ariz. 188 (App.1994).

"Extreme and outrageous" means conduct "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Mintz*, 183 Ariz. at 554, 905 P.2d at 563 (citing to Restatement (Second) of Torts, cmt. d). The existence of a legitimate purpose for the conduct means it "cannot be regarded as 'atrocious and utterly intolerable in a civilized community" no matter how upsetting. *Id.* The legitimate purpose of attorney discipline removes it from the realm of extreme and outrageous conduct, no matter how upsetting to Plaintiff.

This claim must be dismissed pursuant to Rule 12(b)(6).

**III.    CONCLUSION.**

For the foregoing reasons, Plaintiffs' SAC must be dismissed in its entirety with prejudice.

DATED this 15th day of August, 2019.

**BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C**.

By /s/ Lisa T. Hauser
    Lisa T. Hauser
    Carrie A. Laliberte
    2325 E. Camelback Rd., Ste. 300
    Phoenix, Arizona 85016
    *Attorneys for Defendant State Bar of Arizona*

## NOTICE OF CERTIFICATION OF CONFERRAL

Pursuant to this Court's Order of April 30, 2019 [Doc. 5], Defendant State Bar of Arizona gives notice that it conferred with Plaintiff Strojnik to determine whether an amendment could cure his deficient SAC [Doc. 22] and have been unable to agree that the pleading is curable by a permissible amendment.

DATED this 15th day of August, 2019.

**BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C**.

By /s/ Lisa T. Hauser
    Lisa T. Hauser
    Carrie A. Laliberte
    2325 E. Camelback Rd., Ste. 300
    Phoenix, Arizona 85016
    *Attorneys for Defendant State Bar of Arizona*

1

2

**CERTIFICATE OF SERVICE**

3          I hereby certify that on this 15th day of August, 2019, I electronically transmitted the

4    attached document to the Clerk's Office using the CM/ECF System for filing and transmittal

5    of a Notice of Electronic Filing to all parties.

6

7

8                                                       /s/ Carolyn Alter
                                                    Legal Assistant to Lisa T. Hauser

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28