Peter Strojnik (Sr.)
7847 N. Central Ave.
Phoenix, Arizona 85020
Telephone: (602) 524-6602
PS@strojnik.com

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

PETER STROJNIK, (Sr.)

Plaintiff,

vs.

STATE BAR OF ARIZONA, an Arizona nonprofit corporation, SHAUNA MILLER and JOHN DOE MILLER, husband and wife; MARET VESSELLA and JOHN DOE VESSELLA, Husband and Wife; YET UNKNOWN ENTITIES AND PERSONS WHO PARTICIPATED IN THE ALLEGED CONSPIRACY

Defendant.

Case No: 2:19-cv-02704-DJH

**PLAINTIFF'S OPPOSITION TO DEFENDANT STATE BAR OF ARIZONA'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

**Oral Argument Requested**

## INTRODUCTION

Defendants' lead barney is that Plaintiff "alleges various violations of his rights in connection with disciplinary action taken against him for his conduct in connection with disciplinary action taken against him…" This is a rather clear example of debate misdirection. Plaintiff does not allege that Defendants lack the right to commence any type of disciplinary action against any member of the SBA. To the contrary, Plaintiff alleges that the SBA entered into a conspiracy with Brnovich, Jennings, Strauss &

Salmon and the East Mesa Chamber of Commerce for the sole purpose of preventing Plaintiff from enjoying his 1st Amendment right to expressive dissociation from the enjoyment of his rights under Title IV of the ADA.

It is true that for its part of the conspiracy, the SBA used the only tool in its arsenal to affect the conspiracy: disciplinary action.  But the use of disciplinary action is not alleged to be wrong committed by the SBA here.  It is the SBA'a agreement with Brnovich *et al* to use the disciplinary action to achieve the goals of the conspiracy, that is, to virtually destroy Plaintiff's and, consequently, Arizona's disabled community's, rights to seek redress for their 1st Amendment rights to (1) expressive dissociation (2) redress, and to do it through the violations of 42 USC §12203 and 28 CFR §36.206.

Defendants make hay of the disciplinary proceeding.  In connection with his wrongly alleged ethical violations by the SBA, Plaintiff clearly alleges that the entire disciplinary proceeding was no more than a maneuver to carry out the conspiracy to its desired result. Plaintiff makes clear that the underlying proceedings cleared Strojnik of any wrongdoing.  So, with respect to State Court Cases, Plaintiff states, Doc. 22, that:

> 27. At this time Brnovich, defendant State Bar of Arizona and JSS realized – or should have realized – that Judge Talamante's decision was wrong, incorrect and contrary to law and that a continued harassment and intimidation of Plaintiff was contrary to the cause of justice and, further, that ***any continued prosecution of Strojnik "would not advance the cause of justice"***. In fact, in a Court filing, Brnovich so admitted on or about November 6, 2017.

Plaintiff also alleges that Judge O'Neil found that Plaintiff's federally filed ADA cases were "meritorious"[1]:

> 37. Plaintiff was not to be economically deterred and, therefore, the SBA filed for interim suspension.  At the conclusion of the Interim Suspension Hearing, the presiding judge O'Neill noted, paraphrasing, "all he has heard is that Strojnik filed meritorious ADA cases" implying that there was no basis for interim suspension.

Lastly, Plaintiff points to the order of interim suspension which clarifies that *despite*  the oral finding that Strojnik filed only *meritorious* ADA lawsuits, he and his

---

[1] Notably, O'Neill did not find that Plaintiff committed *any*  ethical violations.

clients must nonetheless be stopped from exercising their constitutions rights because his filing of *meritorious* ADA claims "will continue without immediate action by this Court":

> 38. Nonetheless, through a methodology and subsequent events currently unclear to Plaintiff, Judge O'Neil entered an order of interim suspension where he stated, in part:
>
>> The evidence and testimony show that Mr. Strojnik is partaking in a scheme that will cause imminent and substantial harm to the public and administration of justice. The additional lawsuits Mr. Strojnik has filed since the State Bar's Motion for Interim Suspension show that his conduct will continue without immediate action by this Court. Any potential damage to Mr. Strojnik is outweighed by the harm to the public and to the profession.

Lastly, the SBA *never* found that Plaintiff committed *any* ethical violations in connection with his ADA practice. In his tender of consensual disbarment, Plaintiff stated, Doc 22 at ¶3:

> 3. On May 8, 2019, Plaintiff tendered to SBA a voluntary Consent to Disbarment stating, in part:
>
>> I am aware of the rules of the Supreme Court with respect to discipline, disability, resignation and reinstatement, and I understand that any future application by me for admission or reinstatement as a member of the State Bar of Arizona will be treated as an application by a member who has been disbarred for professional misconduct, as set forth in the charges made against me. I have previously denied the allegations of any impropriety and enter this Consent as a consequence of my ailing health and desire for peace.

**SUMMARY**

SAC narrates a story of the hostility of Arizona's powerful institutions toward the civil rights of the disabled individuals. It notes the conspiracy between AG Brnovich ("Brnovich"), the Arizona State Bar ("SBA"), Mesdames Miller and Vessella, the local lawfirm of Jennings Strauss and Salmon ((in particular Lindsay Leavitt and Scott Frerichs) ("JSS") and the East Mesa Chamber of Commerce ("EMCC") to deny disabled individuals and Plaintiff their federally and constitutionally protected civil rights. This was accomplished through violations of 42 U.S.C. § 1983, the violation of Plaintiff's 1st

Amendment right to dissociation, violation of Plaintiff's rights pursuant to 42 U.S.C. § 12203 and 28 CFR § 36.206, a 1983 conspiracy to violate civil rights, and common law torts of civil conspiracy, aiding and abetting, tortious interference with contract, abuse of process and intentional infliction of emotional distress.

Defendant State Bar of Arizona ("SBA") moves to dismiss [Doc 18] on the following bases:

A. Lack of Jurisdiction on the basis of SBA's 11th Amendment Absolute Immunity. Plaintiff responds that the State of Arizona has waived sovereign immunity in *Stone v. Arizona Highway Commission*, 381 P.2d 107 (Ariz. 1963). Plaintiff further responds that SBA acted in its private corporate capacity not as an arm of the Supreme Court, but as a private non-profit corporation acting through its agents, Miller and Vessella, whose only concern was with their and SBA's reputation. Further, Congress abrogated State's sovereign immunity.

B. Lack of Jurisdiction regarding Plaintiff's consensual disbarment. Plaintiff responds that he does not challenge his consensual disbarment.

C. Mootness. Defendant claims that subsequent consensual disbarment moots Plaintiff's allegations of prior 1st Amendment expressive dissociation. Plaintiff responds that the below enumerated exceptions to mootness defeat SBA's position.

D. Failure to State any claim for relief. Plaintiff responds that the elements of a 1983 claim are (1) the violation of a right secured by the Constitution or laws of the United States, (2) by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988) and asserts that all claims are stated clearly and sufficiently all as more fully developed below.

Defendant's current facial attack on Plaintiff's pleading is replete with factual issues making it uniquely unsuited for a 12(b) Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

1. **STANDARD OF REVIEW**

    A. **12(b)(1) (Lack of Subject Matter Jurisdiction)**

4

Defendant mounts a facial attack against the Complaint. In a facial attack, the moving party asserts that the lack of federal subject matter jurisdiction appears on the "face of the pleadings." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). *See also Safe Air for Everyone v. M*eyer, 373 F.3d 1035, 1039 (9th Cir. 2004). In the case of a facial attack, the court is required to accept as true all factual allegations set forth in the complaint, to the extent that all such allegations are not contradicted by the documents incorporated by reference. *Miranda v. Reno*, 238 F.3d 1156, 1157 n. 1 (9th Cir. 2001).

**B. 12(b)(6) Failure to State a Claim**

A complaint must contain a "short and plain statement of the grounds for the court's jurisdiction, " a "short and plain statement of the claim showing that the pleader is entitled to relief, " and "a demand for the relief sought." Fed.R.Civ.P. 8(a). While Rule 8 does not demand factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A dismissal for failure to state a claim "is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (internal citation omitted); *see also Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) (Rule 12(b)(6) dismissal motion "can be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim."). To survive a motion to dismiss under Rule 12(b)(6), a pleading must allege facts sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim must be plausible, allowing the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Ashcroft*, 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Court must view the complaint in the light most favorable to the nonmoving party, with every doubt resolved on his behalf, and with that party's allegations taken as true. *See Abramson v. Brownstein*, 897 F.2d 389, 391 (9th Cir. 1990).

## 2. THE SBA, MILLER AND VESSELLA ARE NOT ENTITLED TO 11TH AMENDMENT IMMUNITY

### A. State Bar is *not* a State Agency to which 11th Amendment Immunity Applies.

Unlike perhaps some other Bar agencies, Arizona's State Bar is not a State Agency to which 11th Amendment immunity applies[2]:

> **About Us**
>
> The State Bar of Arizona is a non-profit organization that operates under the supervision of the Arizona Supreme Court. The Bar regulates approximately 18,500 active attorneys and provides education and development programs for the legal profession and the public. **The Bar's mission states that it exists to serve and protect the public with respect to the provision of legal services and access to justice.**
>
> ∗∗∗
>
> **The State Bar is not a state agency. The organization's activities are funded through membership fees, service fees and other self-generated revenue**.

### B. State Supreme Court waived State's tort immunity in 1963.

The Arizona Supreme Court abolished the state's sovereign immunity in the 1963 case of *Stone v. Arizona Highway Commission*, 381 P.2d 107 (Ariz. 1963). *See also Glazer v. State*, 347 P.3d 1141, 1144 (Ariz. 2015) ("This Court abolished the doctrine of sovereign immunity for tort liability in 1963."). Here, Plaintiff alleges conspiracy to violate civil rights, civil conspiracy, aiding and abetting, tortious interference with contract, abuse of process and intentional infliction of emotional distress – all torts.

### C. Congress abrogated sovereign immunity.

The ADA abrogates sovereign immunity, *see* 42 USC 12203 and 28 CFR Part 36.206. 42 USC 12203(a) prohibits any "person" from discriminating against an

---

[2] Plaintiff requests that the Court take judicial notice of State Bar's "About Us" disclosure, https://www.azbar.org/AboutUs

6

individual engaged in enforcement of the ADA. Subsection (b) makes it unlawful (by anyone) to interfere, coerce or intimidate any person engaged in the aiding or encouraging another in the exercise of his/her ADA civil rights.

28 CFR §36.206(a) clarifies 42 USC 12203 as follows:

### CFR § 36.206 Retaliation or coercion

(a) No private ***or public entity*** shall discriminate against any individual because that individual has opposed any act or practice made unlawful by this part, or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Act or this part.

(b) No private ***or public entity*** shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the Act or this part.

(c) Illustrations of conduct prohibited by this section include, but are not limited to:

(1) Coercing an individual to deny or limit the benefits, services, or advantages to which he or she is entitled under the Act or this part;

**(2) Threatening, intimidating, or interfering with an individual with a disability who is seeking to obtain or use the goods, services, facilities, privileges, advantages, or accommodations of a public accommodation;**

**(3) Intimidating or threatening any person because that person is assisting or encouraging an individual or group entitled to claim the rights granted or protected by the Act or this part to exercise those rights; or**

**(4) Retaliating against any person because that person has participated in any investigation or action to enforce the Act or this part.** (Emphasis supplied)

7

Accordingly, both 42 USC 12203 and 28 CFR Part 36.206 abrogate State's sovereign immunity through Act of Congress.

**D. Plaintiff alleges that, as relevant to Plaintiff's claims, SBA, Miller and Vessella acted in their private capacities and not as a prosecutorial arm of the Supreme Court.**

As indicated above, the issue of prosecutorial immunity is a misdirection. Nowhere does Plaintiff allege misconduct in connection with the prosecution of the alleged ethical violations, none of which, incidentally, was ever proven or found true.

Plaintiff specifically alleges a *conspiracy* committed by the SBA "in its private, non-governmental capacity, non-judicial or quasi-judicial purposes, but under the color of state law":

> 12. Defendant SBA is a private non-profit corporation established in 1933.
>
> 13. All acts committed by the SBA through its agents and employees Miller and Vessella were committed by it in its private, non-governmental capacity, non-judicial or quasi-judicial purposes, but under the color of state law. (Defendants are hereinafter sometimes referred jointly as "SBA" or "Defendants")

Plaintiff then described the conspiracy:

> 33. SBA and Brnovich agreed that, despite Plaintiff's vindication by the *CREEC* decision, they would work together to affect Brnovich's, SBA's, JSS's, EMCC's desire to accomplish a disbarment of Plaintiff for the purpose of (1) retaliation, (2) interference, (3) coercion and/or (4) intimidation of Plaintiff.
>
> 34. **For its part, the SBA agreed to investigate the bar charges even where, on their face, a bar charge would disclose no violation of ethical rules**.
>
> 35. For its part of the agreement, Brnovich agreed to (1) conduct independent investigation of Plaintiff and share the results with the SBA, (2) send out criminal investigators to investigate Strojnik and the non-profit organization to whom Strojnik donated ADA litigation proceeds ("AID"), (3) provide support and assistance in SBA's investigations of Strojnik and AID and (4) provide additional assistance to the SBA in any proceeding through testimony of Brnovich's staff.
>
> 36. **The purpose of the agreements between SBA, Brnovich, JSS and EMCC was for Plaintiff to incur unnecessary attorney's fees and costs, and force**

8

**Plaintiff to cease his civil rights work through economic extorsion and the threat of disbarment.**

37. Plaintiff was not to be economically deterred and, therefore, the SBA filed for interim suspension.  At the conclusion of the Interim Suspension Hearing, the presiding judge O'Neill noted, paraphrasing, "all he has heard is that Strojnik filed meritorious ADA cases" implying that there was no basis for interim suspension. (Emphasis supplied)

Prosecutors are generally immune from civil liability for actions taken in their official capacities. *Imbler v. Pachtman*, 424 U.S. 409, 430-31, 47 L. Ed. 2d 128, 96 S. Ct. 984 (1976). **This immunity is absolute when the prosecutor acts within the scope of his or her authority and in a quasi-judicial capacity.** *Gobel v. Maricopa County*, **867 F.2d 1201, 1203 (9th Cir. 1989).** The prosecutor's "scope of authority" includes those activities with some connection to the general matters committed to the prosecutor's control or supervision. *Id.* "Quasi-judicial" activities are those that are intimately associated with the judicial process. Id. (citing *Imbler*, 424 U.S. at 430). **But a prosecutor's conduct while acting as an administrator or investigative officer is not "quasi-judicial" and, therefore, does not enjoy absolute immunity**. See *Challenge, Inc. v. State*, 138 Ariz. 200, 204, 673 P.2d 944, 948 (App. 1983). Accordingly, a court must apply a "functional analysis" to determine whether absolute immunity exists: it must examine the nature of the prosecutor's activities. *Gobel*, 867 F.2d at 1203; *Challenge*, 138 Ariz. at 204, 673 P.2d at 948.

Plaintiff clearly alleges both that SBA's conduct was outside its scope of its authority, see Doc. 22 at ¶¶ 12-13 and that it was investigatory and not prosecutorial in nature, see *id.*  at ¶¶ 33-37. Additionally, the Second Amended Complaint is clear that there were no "judicial proceedings" at the time of the conspiracy to which immunity could apply.

Defendant's Motion to Dismiss is uniquely inappropriate at a time when the parties have not yet completed discovery to determine:

(1) Whether there was a judicial proceeding at the time of the conspiracy to which immunity *could*  apply; and

(2) Whether Defendants acted within the scope of their authority; and

9

(3) Whether Defendant's acted in an investigative (as alleged) function.

As clearly stated, "[i]n determining whether a prosecutor enjoys absolute immunity from civil liability ... courts must apply a functional analysis to determine whether the prosecutor's acts fall within the bounds of 'judicial' as opposed to 'investigative or administrative duties.' " *Iseley v. Bucks County,* 549 F.Supp. 160, 166 (E.D.Pa.1982).

For purposes of Defendant's Motion, Plaintiff's allegations must be accepted as true. SBA's Motion fails on this issue.

### 3. PLAINTIFF DOES NOT ATTACK CONSENSUAL DISBARMENT – HE ATTACKED SBA'S REFUSAL TO RECOGNIZE HIS RIGHT TO EXPRESSIVE DISSOCIATION

On pp 6-9 of the M2D [Doc. 18] the SBA argues that "The Court Lacks Subject Matter Jurisdiction of Plaintiff's Claim Attacking his Disbarment". Plaintiff does not attack his disbarment. He consented to the disbarment. What he objects to is SBA's refusal to recognize his 1st Amendment Right to Dissociation. *See* SAC at ¶¶ 54-60:

> 54. Therefore, on March 8, 2019, Plaintiff filed with the Presiding Disciplinary Judge a Motion To Recognize Strojnik's Expressive Dissociation From The Arizona State Bar. The Motion stated, in part:
>
>> The First Amendment, made applicable to the States by the Fourteenth Amendment, forbids abridgment of the freedom of speech "includes both the right to speak freely and the right to refrain from speaking at all." *Wooley* v. *Maynard*, 430 U. S. 705, 714 (1977); see *Riley* v. *National Federation of Blind of N. C., Inc.*, 487 U. S. 781, 796–797 (1988); *Harper & Row, Publishers, Inc.* v. *Nation Enterprises*, 471 U. S. 539, 559 (1985); *Miami Herald Publishing Co.* v. *Tornillo*, 418 U. S. 241, 256–257 (1974); accord, *Pacific Gas & Elec. Co.* v. *Public Util. Comm'n of Cal.*, 475 U. S. 1, 9 (1986) (plurality opinion). The right to eschew association for expressive purposes is likewise protected. *Roberts* v. *United States Jaycees*, 468 U. S. 609, 623 (1984) ("**Freedom of association . . . plainly presupposes a freedom not to associate**") (emphasis supplied); see *Pacific Gas & Elec.*, *supra*, at 12 As Justice Jackson memorably put it: "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or *force citizens to confess by word or*

10

*act their faith therein.*" *West Virginia Bd. of Ed.* v. *Barnette*, 319 U. S. 624, 642 (1943) (emphasis added). (Emphasis in original.)

55. The SBA did not respond but, instead, submitted a Motion to Strike on the fundamental bases that Plaintiff's Motion is "redundant", "immaterial" and "impertinent" and further that the Motion is damaging SBA's "credibility and reputation".

56. Plaintiff's Motion was denied by SBA's O'Neil.

57. By forcing Plaintiff to remain a member of the SBA, Strojnik was forced to confess to State Bar's faith in discrimination, segregation, coercion, threats and intimidation.

58. Further, Defendants and Brnovich have taken the above actions to force Plaintiff to remain a member of the SBA in order to keep him under the oppressive regime of the SBA's oversight, thus preventing him from exercising his own individual 1st Amendment right to redress[3] ADA violations.

59. The denial of Plaintiff's motion for dissociation violates Plaintiff's First Amendment right to expressive dissociation.

60. Plaintiff has been damaged by SBA's denial of his right to expressive dissociation.

For this reason, SBA's entire argument regarding alleged objection to the consensual disbarment is irrelevant.

**4. PLAINTIFF'S EXPRESSIVE DISSOCIATION CLAIM IS NOT MOOT**

SBA claims that the question of expressive dissociation was mooted by subsequent consensual disbarment. The SBA is incorrect. In ¶¶ 7, 8 of SAC, Plaintiff alleges:

7. Despite Plaintiff's disbarment and the setting aside the interim suspension order, Plaintiff continues and will to continue experiencing concrete and continuing injury through severe collateral consequences of the disbarment in lieu of dissociation, including, without limitation, the following:

---

[3] Plaintiff's First Amendment right to "petition the Government for a redress of grievances" — which includes the filing of lawsuits — and which is "one of `the most precious of the liberties safeguarded by the Bill of Rights.'" *BE & K Constr. Co. v. NLRB,* 536 U.S. 516, 524, 122 S.Ct. 2390, 153 L.Ed.2d 499 (2002) (quoting *United Mine Workers v. Illinois Bar Assn.,* 389 U.S. 217, 222, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967)).

11

a. Effectively prevents Plaintiff for reapplying to the membership with the SBA or this District Court even at a time when the SBA adopts non-discriminatory values; and

b. Effective foreclosure from applying to State Bar Membership in non-discriminatory jurisdictions, including State and Federal jurisdictions; and

c. The defamatory scorn experienced by attorneys who are branded as "disbarred"; and

d. As an ADA Tester himself, Plaintiff currently experiences and will continue to experience ADA defense counsel refusal to recognition of expressive dissociation in the hope that some judges who fall within "skeptical" and "hostile" categories will be, as some have been, influenced by this false narrative.

8. Despite Plaintiff's consent to dissociate himself from the SBA, the case and controversy continues for the reason that Defendant's conduct is capable of repetition yet evading review through its power to disbar those who refuse to conform to its segregationist views. (Footnote omitted)

The US Supreme Court has made it clear that a subsequent act (consensual disbarment here) permits a matter to remain a live case or controversy if there remains "some concrete and continuing injury" or "collateral consequence" resulting from the [refusal to dissociate]. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). The Supreme Court has made clear that courts are to "presume that a wrongful [violation of constitutional rights] has continuing collateral consequences (or, what is effectively the same, to count collateral consequences that are remote and unlikely to occur)." *Id*. at 7-8 (citing *Sibron v. New York*, 392 U.S. 40, 55-56 (1968)). This presumption of collateral consequences "acknowledge[s] the obvious fact of life that most [constitutional violations] do in fact entail adverse collateral legal consequences." *Sibron*, 392 U.S. at 55.

SBA's mootness argument is defeated by the allegations of concrete and continuing injury and collateral consequences alleged in the pleading. This issue in particular is not proper on a motion to dismiss as it is replete with factual questions requiring resolution through discovery.

### 5. 42 U.S.C. §1983 CLAIM IS WELL PLED

"Section 1983 is a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Naffe v. Frey*, 789 F.3d 1030, 1035 (9th Cir. 2015) (quotation marks and citation omitted). To state a claim under § 1983, a plaintiff must allege two distinct elements: (1) the violation of a right secured by the Constitution or laws of the United States, (2) by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

### i. Plaintiff sufficiently alleges the element of the violation of his rights secured by the Constitution or laws of the United States.

Plaintiff's entire Complaint is premised on Miller's, Vessella's and SBA's conspiracy with Brnovich, JSS and EMCC to deprive Plaintiff of his 1st Amendment right to expressive dissociation and the violations of 42 USC §12203 and 28 CFR §36.206. *See* SAC Count 1, ¶¶ 15-65.

### ii. Plaintiff sufficiently alleges that the violation was perpetrated by individuals acting under the color of state law.

Plaintiff sufficiently alleges that Defendants acted under the color of state law. *See* SAC at ¶¶ 15, 63, 64.

A person acts under color of state law if he exercises "power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West*, 487 U.S. at 49 (quotation marks omitted). This requirement generally limits § 1983 suits to claims against public officials. To establish that private individuals like Miller and Vessella, acted under color of state law, a plaintiff must show that the individual "conspired or acted jointly with state actors to deprive the plaintiff[] of [his] constitutional rights.'" *Radcliffe v. Rainbow Const. Co.,* 254 F.3d 772, 783 (9th Cir. 2001) (citing *United Steelworkers v. Phelps Dodge Corp.,* 865 F.2d 1539, 1540 (9th Cir. 1989)). This requires evidence of "an agreement or meeting of the minds to violate constitutional rights. Obviously, Mesdames Miller and Vessella are "persons".

13

Again, the conspiratorial agreement and the meeting of the minds between Miller, Vessella, the SBA and Brnovich is sufficiently and factually pled in SAC Count 1, ¶¶ 15-65.

## CONCLUSION AND PRAYER FOR RELIEF

The issues raised in Defendant's M2D are factual issues requiring significant and thorough discovery. These issues are particularly unsuitable for decision on a Motion to Dismiss without further investigation.

For these reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss.

DATED this 19th day of August 2019.

**PETER STROJNIK**

Peter Strojnik
Plaintiff

Distributed through PACER.