*Law Offices of*
***BONNETT, FAIRBOURN, FRIEDMAN***
***& BALINT, P.C.***
*2325 East Camelback Road, Suite 300*
*Phoenix, Arizona 85016*
*(602) 274-1100*

*Lisa T. Hauser (#006985)*
*(lhauser@bffb.com)*
*Carrie A. Laliberte (#032556)*
*(claliberte@bffb.com)*
*Attorneys for Defendant*
*State Bar of Arizona*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Peter Strojnik, (Sr.),<br><br>  Plaintiff,<br><br>vs.<br><br>State Bar of Arizona, an Arizona nonprofit corporation; Shauna Miller and John Doe Miller, husband and wife; Maret Vessella and John Doe Vessella, husband and wife; yet unknown Entities and Persons who participated in the conspiracy alleged below,<br><br>  Defendants. | Case No. CV-19-02704-PHX-DJH<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT** |

Defendants State Bar of Arizona ("SBA"), Shauna Miller and John Doe Miller ("Miller"), and Maret Vessella and John Doe Vessella ("Vessella") (collectively, "State Bar Defendants" or "SBA Defendants") reply in support of their motion to dismiss Plaintiffs' Second Amended Complaint against them under Rule 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure. [Doc. 45]. Their reply is supported by the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION.

In opposing the SBA Defendants' motion to dismiss, Plaintiff elaborates on the fanciful legal theories supporting his claims for relief. [Doc. 45 at 2-3]. To Plaintiff, membership in the SBA is antithetical to his rights as an allegedly disabled person under the ADA. As a result, Plaintiff wanted to resign his membership—dissociate—but was not permitted to do so because disciplinary proceedings were pending against him. These proceedings began before he expressed a desire to dissociate. But he alleges that the SBA used the disciplinary process to effect a conspiracy aimed at stopping him (and the disabled community) from enjoying, or seeking redress of, their 1st Amendment right to expressive dissociation through retaliation against him in violation of 42 U.S.C. § 12203.

This narrative is problematic for many reasons. Not the least of them is the fact that Plaintiff expressed no desire to dissociate from the SBA until after disciplinary proceedings had commenced against him for unethical conduct. And Plaintiff never really explains what possible right of expressive dissociation members of Arizona's disabled community seek to vindicate if they are not members of the SBA. He does not allege that any are SBA members.

In support of his argument that the disciplinary process against him was a sham, he contends that he was "cleared … of any wrongdoing" in "the underlying proceedings"; that the Presiding Disciplinary Judge ("PDJ") found that cases Plaintiff filed in federal court were meritorious; and that "the SBA *never* found that Plaintiff committed *any* ethical violations in connection with his ADA practice."[1] [*Id.*; Doc. 45 at 2-3]. Plaintiff's response/opposition to the motion to dismiss gives the impression that he consented to

---

[1] These and other of Plaintiff's factual allegations are contrary to the disciplinary record that is the subject of Defendants' separately pending request for judicial notice. Plaintiff prefers his version of events but, because his disbarment is central to his complaint, they may be considered without converting the motion to dismiss into a motion for summary judgment. *See Pellegrini v. Fresno County*, 742 Fed.Appx. 209, 211 (9th Cir. 2018).

- 2 -

disbarment in order to be positioned to make the argument that he was never found to have committed the ethical violations alleged in the complaint. But Plaintiff ignores the fact that in consenting to disbarment, he was required to acknowledge the charges filed against him and that he did not desire to contest or defend against them. By consenting to disbarment, Plaintiff is not entitled to pretend that he was exonerated even in the context of a motion to dismiss.[2]

## II. ARGUMENT.

### A. Plaintiff's Jurisdictional Arguments Fail.

#### 1. The Ninth Circuit recognizes the SBA as an arm of the state with respect to attorney discipline.

Plaintiff's only argument that the SBA is not an arm of the state entitled to eleventh amendment immunity is that its web sites states that it is a non-profit organization operating under the supervision of the Arizona Supreme Court and not a government-funded state agency. The fact that the SBA is a corporation is irrelevant. What matters for purposes of the eleventh amendments is what the SBA does and how it is treated by the state. *See Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir.1994) (federal courts assess the extent to which the entity "derives its power from the State and is ultimately regulated by the State"); *Mitchell v. Los Angeles Community College District*, 861 F.2d 198, 201 (9th Cir. 1988)

---

[2] Despite Plaintiff's suggestion that his allegations must be taken as true for purposes of determining this motion to dismiss, not all allegations merit deferential treatment. Even Plaintiff recognizes that factual allegations in the complaint that are contradicted by the documents incorporated by reference are an exception to this rule. [Doc. 45 at 2]. Other exceptions include allegations made indefinite or erroneous by other allegations in the same complaint, allegations contrary to facts of which the court will take judicial notice; and allegations not susceptible to proof by legitimate evidence. *J&J Sports Productions, Inc. v. Ferreiras*, 2018 WL 6168557, at *14 (E.D.N.Y. Nov. 20, 2018); *In re McGee*, 359 B.R. 764, 774 (B.A.P. 9th Cir. 2006). Allegations contradicted by documents that are not attached but form the basis for the complaint should also be excepted given that they may be considered in deciding a motion to dismiss. *See Pellegrini*, 742 Fed.Appx. at 211; *see also Thomas v. Ally Bank*, 2017 WL 4357770, *1, n. 1 (D. Ariz. Sept. 29, 2017) (in considering a motion to dismiss, the court may also consider evidence where the document is central to or forms the basis of the plaintiffs claim even if it is not attached to the complaint).

(federal courts look to the way state law treats the entity in determining whether it is an arm of the state).

The SBA does not act in a private capacity in the matter of attorney discipline The Arizona Supreme Court has exclusive jurisdiction to regulate attorney discipline, and the SBA is its instrumentality for the purpose of conducting disciplinary proceedings. *In re Riley*, 142 Ariz. 604, 607-08 (1984). This Circuit agrees when it comes to the eleventh amendment. *See Gilchrist v. Arizona Supreme Court*, 10 Fed.Appx. 468, 470 (9th Cir.2001) (affirming dismissal of the SBA "because they are entitled to immunity under the Eleventh Amendment"). The SBA is treated as an instrumentality of the state for other purposes as well. *See Bates v. State Bar of Arizona*, 433 U.S. 350, 363 (1977) (the Court upheld application of the Sherman Act's "state action" exception to the SBA's enforcement of a ban on attorney advertising).

Plaintiff fails to address the authorities cited in Defendants' motion and provides no case authority in support of his argument that the SBA is not an arm of the state. This Court must dismiss Plaintiff's claims against the SBA with prejudice on eleventh amendment grounds.

**2.        Arizona has not waived its immunity from suits against it in federal court.**

Plaintiff incorrectly argues that the State has waived its eleventh amendment immunity in federal court by waiving its sovereign immunity in state court in *Stone v. Ariz. Highway Comm'n*, 93 Ariz. 384 (1963). In *Stone*, the Arizona Supreme Court abolished sovereign immunity from tort claims. *Id. Stone* "does not address suits against a state in federal court, but rather addresses suits against the State of Arizona in state court." *King v. State of Arizona*, No. 09-8062-PHX-DGC, 2010 WL 3219139, * 2 (D.Ariz., Aug. 13, 2010).

A state's waiver of eleventh amendment immunity must be express and unequivocal. *See Harrison v. Hickel*, 6 F.3d 1347, 1354 (9th Cir.1993) ("We give effect to a state's waiver of Eleventh Amendment immunity 'only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction.'"). In refusing to imply a waiver of eleventh amendment immunity

- 4 -

in *Stone*, the Ninth Circuit stated "that there is no indication in the Stone opinion that Arizona intended to consent to anything more than suit in its own courts. *Ronwin v. Shapiro*, 657 F.2d 1071, 1074 (9th Cir.1981); *Harris v. Arizona Bd. of Regents*, 528 F. Supp. 987, 994 (D. Ariz. 1981).

**3.    Plaintiff makes no ADA claim for which Congress has abrogated the state's sovereign immunity.**

Next, Plaintiff argues that Congress abrogated sovereign immunity when it enacted the Americans With Disabilities Act ("ADA"). Congress abrogated eleventh amendment immunity in some parts of the ADA and not others. Plaintiff cites to 42 U.S.C. § 12203 as the source of Congressional abrogation.

Tackling this issue first requires a look at Plaintiff's SAC. He seeks both declaratory relief and damages against the SBA Defendants under "42 U.S.C. §§ 1981, 1981a, 1983, 1985, and 1988 for conspiracy to violate and the actual violation of Plaintiff's 1st Amendment Right of Dissociation, statutory rights of freedom from (1) retaliation, (2) interference, (3) coercion and/or (4) intimidation pursuant to 42 USC §12203 and 28 CFR §36.206 and for conspiracy to violate Plaintiff's civil rights" with non-parties. [Doc. 22, ¶ 1]. Plaintiff alleges that he is a member of a protected class under the ADA. [Doc. 22, ¶ 11]. In Count 1 of his SAC, he alleges that he was denied his 1st Amendment rights in two ways: (1) by denial of his right to expressive dissociation by not allowing him to resign from the SBA when it became apparent to him that the SBA believes in discrimination against the disabled [Doc. 22, ¶¶ 46-60] and (2) by "preventing him from exercising his own individual 1st amendment right to redress ADA violations" by requiring him to stay in the SBA and then retaliating against him through the disciplinary process [Doc. 22, ¶ 58].

The ADA provision on which Plaintiff relies, 42 U.S.C. § 12203, is part of Title II of the ADA. Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. This applies to cases implicating the accessibility of judicial

services. *Tennessee v. Lane*, 541 U.S. 509, 522-23 (2004). Under § 12203, it is unlawful for a person to retaliate or interfere with any individual *who exercises one's right as a person with a disability*. 42 U.S.C. § 12203 (emphasis added).

When Congress enacted the ADA, it "invoke[d] the sweep of congressional authority, including the power to enforce the fourteenth amendment…." 42 U.S.C. § 12101(b)(4). Congress may abrogate state sovereign immunity when it both unequivocally intends to do so and, in its abrogation, acts pursuant to a valid grant of constitutional authority. *Board of Trustees of Univ. of Ala. v. Garrett,* 531 U.S. 356, 363 (2001) (holding that Title I of the ADA does not abrogate eleventh amendment immunity). As to Title II of the ADA, the Supreme Court has held that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *United States v. Georgia,* 546 U.S. 141, 159 (2006) (emphasis in original). For other claims, the Court instructed lower courts to:

> determine.. on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment whether Congress' purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Id*. "Consequently, a court must first determine which aspects of a State's alleged conduct violated Title II. If the State's conduct does not violate Title II, a court will not proceed to the next step in the analysis." *Sanders v. Ryan*, 484 F.Supp.2d 1028, 1038 (D.Ariz. 2007).

To state a Title II ADA claim, a plaintiff must allege that he:

> (1) is a handicapped person; (2) that he is otherwise qualified; and that [the Defendant's] actions either (3) excluded his participation in or denied him the benefits of a service, program or activity; or (4) otherwise subjected him to discrimination on the basis of his physical handicap.

*Id.* (citing *Duffy v. Riveland,* 98 F.3d 447, 455 (9th Cir.1996)). Plaintiff has not alleged that the SBA's conduct discriminated against him on the basis of any physical handicap. Although Plaintiff alleges that he has a disability, he does not allege that the disciplinary process—and its rules preventing his resignation—were applied to him differently than other SBA members on the basis of his alleged disability. He has not been prevented from accessing the courts due to his disability. He does not claim to have been retaliated against due to his disability. Without the claim of a Title II violation, there is no need for further inquiry into whether Title II abrogated the state's eleventh amendment immunity in this instance.

Even if this Court proceeds to the next stage of the analysis—determining whether the conduct in violation of Title II also violated the fourteenth amendment—Plaintiff makes no fourteenth amendment allegation nor could he. The only constitutional violation he claims is his first amendment right to abandon his SBA membership without any negative effects and to redress ADA violations by filing lawsuits. As to the latter, the right to practice law is not a fundamental right for purposes of the fourteenth amendment. *See Leis v. Flynt,* 439 U.S. 438, 442 n. 5 (1979).

Whatever claim Plaintiff has attempted to state in Count I relative to the ADA, the state's eleventh amendment immunity has not been abrogated under *United States v. Georgia*.

**4.   Plaintiff fails to address his *Rooker-Feldman* problem.**

Even if Plaintiff could successfully argue that the SBA's eleventh amendment immunity has been abrogated as to any of his claims, *Rooker-Feldman* remains a jurisdictional bar. Plaintiff's claims are inextricably intertwined with his disbarment as addressed more fully in the motion to dismiss. [Doc. 43 at 6-8].

**5.   Plaintiff's arguments against mootness belie the argument that he does not attack his disbarment.**

In an attempt to escape a loss of subject matter jurisdiction under *Rooker-Feldman*, Plaintiff argues that he does not attack his consensual disbarment. This argument then

collides head on with his additional argument that his request for a declaration that he had a first amendment right to resign from the SBA is not moot by virtue of his consent to disbarment. The continuing injuries or collateral consequences he lists to demonstrate the existence of a case or controversy despite his consent to disbarment all complain of the negative effects of disbarment. The very harms he alleges are harms inextricably linked to his disbarment for which he seeks a remedy through declaratory relief. *Rooker-Feldman* does not give this Court jurisdiction to afford him such a remedy.

And, as stated in the motion to dismiss, his disbarment means that there is no reasonable expectation that Plaintiff will be faced with disbarment and the denial of his so-called right to dissociate at any time in the future. His request for declaratory relief is moot.

**B.    State Bar Prosecutors Enjoy Immunity With Respect To Disciplinary Investigations That Are Conducted For The Supreme Court.**

Plaintiff contends that there is no prosecutorial immunity for investigative acts taken by a prosecutor. Although that may be a correct statement as to some prosecutors who may only have qualified immunity during the investigative phase, it is not true with respect to State Bar Counsel. The Arizona Supreme Court regulates the attorney discipline process and authorizes the SBA and State Bar Counsel to carry out all disciplinary functions that would otherwise be carried out by the court itself. "The State Bar acts in a judicial capacity in dealing with the conduct of attorneys." *Drummond v. Stahl*, 127 Ariz. 122, 126 (App.1980). As to those court-assigned functions, State Bar Counsel performs judge-like functions and enjoys absolute immunity. *See Greene v. Zank*, 158 Cal.App.3d 497, 508 (1984).

> We note that bar associations and their officials charged with the duties of investigating, drawing up, and presenting cases involving *attorney discipline* have historically enjoyed absolute immunity from damage claims for such functions. [citations omitted].

*Id.* (emphasis in original); *see also Lebbos v. State Bar*, 165 Cal.App.3d 656, 666, 669, n. 6 (1985) (conduct in connection with the investigation of attorney was within the scope of the

- 8 -

State Bar's prosecutorial authority and entitled to quasi-judicial immunity even if the prosecutor acted maliciously or in excess of their jurisdiction).

For example, in *Kissell v. Breskow*, 579 F.2d 425 (7th Cir.1978), the court made the observation that the Executive Secretary of the Disciplinary Commission of Indiana's duties involving the "*investigating* of alleged attorney misconduct, presenting recommendations to the Disciplinary Commission, and prosecuting cases of attorney misconduct before the Indiana Supreme Court," were quasi-judicial functions. *Id.* at 430 (emphasis in original). *Greene* also discussed *Simons v. Bellinger,* 643 F.2d 774 (D.C.Cir.1980), in which the District of Columbia Circuit Court held that the members of the District of Columbia Committee on Unauthorized Practice of Law were entitled to absolute immunity in performing their investigative duties. *Id.* at 778. They were engaged in the inherent judicial function of determining who is authorized to practice law and acted "as a surrogate for those who sit on the bench…[and], as a bona fide arm of the Court of Appeals of the District of Columbia, must almost by definition make decisions comparable to those of a judge." *Id.* at 780-81.

Thus, the State Bar Counsel's quasi-judicial immunity extends to the investigative phase. And, although Defendants Miller and Vessella are persons for purposes of § 1983, they have absolute immunity for their alleged conduct, which defeats all of Plaintiff's claims against them.

## III. CONCLUSION.

For the foregoing reasons and those set forth in Defendants' motion to dismiss, Plaintiffs' SAC must be dismissed in its entirety with prejudice.

DATED this 26th day of August, 2019.

                                      **BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C**.

                                      By /s/ Lisa T. Hauser
                                           Lisa T. Hauser
                                           Carrie A. Laliberte
                                           2325 E. Camelback Rd., Ste. 300
                                           Phoenix, Arizona 85016
                                           *Attorneys for Defendant State Bar of Arizona*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of August, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all parties.

                                                    /s/ Carolyn Alter
                                                 Legal Assistant to Lisa T. Hauser