**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Peter Strojnik,<br><br>    Plaintiff,<br><br>v.<br><br>State Bar of Arizona, et al.,<br><br>    Defendants. | No. CV-19-02704-PHX-DJH<br><br>**ORDER** |

Pending before the Court is a Motion to Dismiss the Second Amended Complaint ("Motion") (Doc. 43) filed by Defendants State Bar of Arizona (the "State Bar"), Shauna Miller ("Ms. Miller") and John Doe Miller, and Maret Vessella ("Ms. Vessella") and John Doe Vessella (collectively "Defendants"). Plaintiff Peter Strojnik ("Plaintiff") filed a Response (Doc. 45),[1] and Defendants filed a Reply (Doc. 48).

**I.    BACKGROUND**

Plaintiff filed his original Complaint on April 29, 2019. (Doc. 1). Plaintiff filed a First Amended Complaint on June 4, 2019 (Doc. 14), and a Second Amended Complaint ("SAC") on July 22, 2019. (Doc. 22). Plaintiff's SAC contains claims for: (1) under 42 U.S.C. § 1981, violations of his "[First] Amendment right of Dissociation," and "right to be free from retaliation, interference, coercion, and/or intimidation pursuant to 42 U.S.C.

---

[1] Plaintiff's request for oral argument is denied because the parties have had an adequate opportunity to present their written arguments, and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991); *see also* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings); LRCiv. 7.2(f) (same).

§ 12203 and 28 C.F.R. § 36.203[]"; (2) civil conspiracy; aiding and abetting; tortious interference with contractual relations; abuse of process; and intentional infliction of emotional distress. (Doc. 22). The crux of Plaintiff's SAC is that the State Bar entered into a conspiracy with non-parties Arizona Attorney General Mark Brnovich ("AG Brnovich"), the law firm of Jennings, Strauss & Salmon, and East Mesa Chamber of Commerce ("EMCC") for the sole purpose of preventing "Plaintiff from acting as a private attorney general in the prosecution of Plaintiff's and Plaintiff's clients' civil rights." (*Id.* ¶ 1).

On March 6, 2018, the State Bar moved for interim suspension of Plaintiff's license in a disciplinary proceeding before the Presiding Disciplinary Judge ("PDJ") William J. O'Neil.[2] (Doc. 42-2 at 2).[3] On July 11, 2018, PDJ O'Neil granted the State Bar's Motion for Interim Suspension and Plaintiff was immediately suspended from the practice of law. (*Id.* at 18). Plaintiff's disciplinary proceeding was based on his conduct before state and federal courts. Specifically, Plaintiff filed over 1,700 complaints in Arizona state court and over 160 complaints in the Arizona District Court alleging violations of the Americans

---

[2] Presiding Disciplinary Judge William J. O'Neil, an appointee of the Arizona Supreme Court, is charged with adjudicating attorney discipline, attorney disability, and attorney reinstatement cases. A three-member hearing panel, presided over by the PDJ, issues decisions on disciplinary and reinstatement cases after a formal hearing. Formal proceedings before the PDJ are governed by the Arizona Rules of the Supreme Court and primarily Rules 40-74.

[3] Defendants also filed a Motion for Judicial Notice. (Doc. 42). Therein, Defendants ask the Court to take judicial notice of the following documents filed in Plaintiff's disciplinary proceeding: (1) Order of Interim Suspension of Peter Strojnik in PDJ 2018-9018, (2) Complaint against Peter Strojnik in PDJ 2018-9105, (3) Peter Strojnik's Motion to Recognize Strojnik's Expressive Dissociation from the Arizona State Bar in PDJ 2018-910, (4) the State Bar of Arizona's Motion to Strike in PDJ 2018-9105, (5) Strojnik's Response to the SBA's Motion to Strike in PDJ 2018-9105, (6) Order Re: Motion to Recognize Expressive Dissociation in PDJ 2018-9105, (7) Strojnik's Consent to Disbarment in PDJ 2018-9105, and (8) Judgment of Disbarment in PDJ 2018-9105. (*Id.*) Plaintiff filed a Response, stating, "Plaintiff objects to the Court taking judicial notice of the truth of any statements made in items 2 (Complaint against Peter Strojnik in PDJ 2018-9105) and 4 (The State Bar of Arizona's Motion to Strike in PDJ 2018-9105)." (Doc. 46 at 2). However, Defendants only requested that the identified disciplinary records be judicially noticed for their existence, not for the truth of the underlying facts. The Court finds that the identified disciplinary records are appropriate for judicial notice. *See Hutton v. McDaniel*, 264 F. Supp. 3d 996, 1008 (D. Ariz. 2017). Accordingly, the Court will take judicial notice of the existence—but not the truth of the facts recited therein—of identified disciplinary records.

| | |
|---|---|
| 1 | with Disabilities Act ("ADA") and the Arizonans with Disabilities Act ("AzDA"). |
| 2 | (Doc. 42-2). The State Bar alleged that in connection with those cases, Plaintiff had |
| 3 | "perpetrated a fraud on the court in claiming millions of dollars in attorney's fees and |
| 4 | money damages as part of scheme to make money." (Doc. 42-3 at 5). |


with Disabilities Act ("ADA") and the Arizonans with Disabilities Act ("AzDA"). (Doc. 42-2). The State Bar alleged that in connection with those cases, Plaintiff had "perpetrated a fraud on the court in claiming millions of dollars in attorney's fees and money damages as part of scheme to make money." (Doc. 42-3 at 5).

Plaintiff proffered his resignation from the State Bar on October 24, 2018. (Doc. 1 at 3). However, because disciplinary proceedings had already been initiated against him, pursuant to Arizona Supreme Court Rule 32(c)(11)(B), Plaintiff was not permitted to resign. On November 16, 2018, the State Bar filed a four-count disciplinary complaint against Plaintiff. (Doc. 42-3). On March 20, 2019, Plaintiff filed a "Motion to Recognize Strojnik's Expressive Dissociation from the [] State Bar" in his disciplinary proceeding. (Doc. 42-4). The State Bar responded to Plaintiff's Motion by filing a Motion to Strike. (Doc. 42-5). PDJ O'Neil denied Plaintiff's motion as "legally infirm." (Doc. 42-7 at 10). Shortly thereafter, and before a four-day disciplinary hearing was set to begin, Plaintiff consented to disbarment on May 8, 2019. (Doc. 42-8). On May 10, 2019, PDJ O'Neil entered a Judgment of Disbarment against Plaintiff. (Doc. 42-9).

Defendants move to dismiss Plaintiff's SAC, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) for lack of subject matter jurisdiction. Specifically, Defendants argue that the State Bar has sovereign immunity from suit, and Ms. Miller and Ms. Vessella have prosecutorial immunity from suit. (Doc. 43 at 6).

## II. LEGAL STANDARD

A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). A jurisdictional challenge may be facial or factual. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where the attack is facial, the court determines whether the complaint's allegations are sufficient on their face to invoke federal jurisdiction and accepts all material allegations as true and construes them in favor of the party asserting jurisdiction. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975). Where the attack is factual, "the court need not presume the truthfulness of the plaintiff's allegations." *Safe Air*, 373 F.3d at 1039. In resolving a factual

dispute regarding subject matter jurisdiction, a court may review extrinsic evidence beyond the complaint without converting a motion to dismiss into one for summary judgment. *See id.*; *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (holding that a court "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction").

"[A]lthough sovereign immunity is only quasi-jurisdictional in nature, Rule 12(b)(1) is still a proper vehicle for invoking sovereign immunity from suit." *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015). Thus, once a defendant has asserted sovereign immunity pursuant to Rule 12(b)(1), "'the party asserting subject matter jurisdiction has the burden of proving its existence,' i.e. that immunity does not bar the suit." *Id.* (quoting *Miller v. Wright*, 705 F.3d 919, 923 (9th Cir. 2013)).

### III. DISCUSSION

Plaintiff alleges various violations of his rights related to the State Bar's disciplinary actions against him. Defendants argue the Court lacks jurisdiction over all claims against the Arizona State Bar because it is entitled to absolute immunity under the Eleventh Amendment. Plaintiff responds that: (1) the State Bar acted in its private corporate capacity, not as an arm of the Supreme Court, (2) the State of Arizona has waived sovereign immunity, and (3) Congress abrogated Arizona's sovereign immunity under the ADA. Defendants also argue the Court lacks jurisdiction over claims against Ms. Miller and Ms. Vessella because they are both entitled to prosecutorial immunity. Plaintiff contends that Ms. Miller and Ms. Vessella are not entitled to immunity because their conduct was investigative, not prosecutorial. The Court will address each argument in turn.

#### a. <u>The State Bar's Entitlement to Eleventh Amendment Immunity</u>

The SBA contends that it enjoys immunity from suit under the Eleventh Amendment and therefore it is immune from this suit and this Court's jurisdiction. (Doc. 43 at 4).

The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to

any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. Accordingly, "the Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, an 'arm of the state,' its instrumentalities, or its agencies." *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995); *see also Cleveland v. Pinal County Superior Court*, 2012 WL 4932657, at *3 (D. Ariz. Oct. 16, 2012) ("Under the Eleventh Amendment to the Constitution of the United States, neither a state nor its agencies may be sued in federal court without the state's consent.") (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984))). Several federal courts have determined that state bar associations are arms of the state. "A state bar operates as the investigative arm of its state supreme court, and thus, is an agency of the state; as an agency of the state, the Eleventh Amendment renders state bars immune from suit in federal court." *Cleveland*, 2012 WL 4932657, at *3 (citing *Gilchrist v. Arizona Supreme Court*, 10 Fed. Appx. 468, 470 (9th Cir. 2001)); *see also O'Connor v. State of Nev.*, 686 F.2d 749, 750 (9th Cir. 1982).

Thus, the Court lacks subject matter jurisdiction to adjudicate claims brought against the State Bar unless an exception applies. Specifically, the Court may retain subject matter jurisdiction where: (1) Congress has abrogated that immunity pursuant to its lawmaking powers conferred by the United States Constitution, *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 80 (2000); (2) a state has waived its Eleventh Amendment immunity by consenting to suit, *College Sav. Bank Florida v. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999); or (3) the plaintiff sues a state official in his or her official capacity for prospective injunctive relief under the *Ex parte Young* doctrine, *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73 (1996).

### 1. *The State Bar is an Arm of the State*

First, Plaintiff's argument that the State Bar is not entitled to Eleventh Amendment immunity because it is a non-profit organization lacks merit. (Doc. 45 at 6). Moreover, Plaintiff cites no authority to support his argument. In determining whether an entity is an

arm of the state, federal courts look to "the way state law treats the entity." *Mitchell v. Los Angeles Community College District*, 861 F.2d 198, 201 (9th Cir. 1988) (finding that the court should look to state law to determine whether a community college was an arm of the state or was an independent entity not entitled to Eleventh Amendment immunity), *cert. denied*, 490 U.S. 1081 (1989). This is done "in an effort to assess the extent to which the entity derives its power from the State and is ultimately regulated by the State." *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995) (internal quotation omitted). Arizona state courts and courts in this District have definitively held that the State Bar "is an arm of the Arizona Supreme Court", *Ledvina v. Cerasani*, 146 P.3d 70, 73 (Ariz. Ct. App. 2006), and therefore, the State Bar "is immune from suit under the Eleventh Amendment[.]" *Arizona Attorneys for Criminal Justice v. Ducey*, 2020 WL 954941, at *4 (D. Ariz. Feb. 27, 2020). This Court is thus compelled to so find.

### 2. The Arizona Supreme Court did not Abolish Arizona's Sovereign Immunity in Federal Court

Next, Plaintiff argues that "[t]he Arizona Supreme Court abolished the state's sovereign immunity in the 1963 case of *Stone v. Arizona Highway Commission*, 381 P.2d 107 (Ariz. 1963)." (Doc. 45 at 6). *Stone*, the case Plaintiff relies on, however, does not address suits against Arizona in *federal court*, but rather addresses suits against Arizona in *state court*. *King v. State of Ariz.*, 2010 WL 3219139, at *2 (D. Ariz. Aug. 13, 2010); *see also Ronwin v. Shapiro*, 657 F.2d 1071, 1073 (9th Cir. 1981) ("Although in *Stone* [], Arizona abolished sovereign immunity, consent to be sued in state court does not necessarily imply consent to be sued in federal court."). It is well settled that the Eleventh Amendment bars federal jurisdiction over suits against non-consenting states. *See, e.g., Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 62–65 (1996) (reaffirming strength of Eleventh Amendment and fundamental importance of each state's sovereign immunity). Moreover, a state's waiver of Eleventh Amendment immunity must be express and unequivocal. *See Harrison v. Hickel*, 6 F.3d 1347, 1354 (9th Cir. 1993) ("We give effect to a state's waiver of Eleventh Amendment immunity 'only where stated by the most

express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction.'") (alteration in original) (quoting *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 239–40 (1985))). Consistent with other courts in this district and Ninth Circuit precedent, the Court finds that Arizona has not abrogated its broad sovereign immunity for this case. *See Ronwin*, 657 F.2d at 1073; *King*, 2010 WL 3219139, at *2.

### 3.    *The ADA Does Not Abrogate the State Bar's Sovereign Immunity*

Plaintiff next argues that Congress abrogated state sovereign immunity when it enacted the Americans with Disabilities Act ("ADA") and therefore his ADA retaliation claim is not barred by sovereign immunity. (Doc. 45 at 6-8). In Count One of his SAC, Plaintiff alleges that the State Bar used the disciplinary process to retaliate against him for filing lawsuits to address ADA violations that his individual clients experienced. As previously discussed in this Order, as an arm of the Arizona Supreme Court, the State Bar enjoys Arizona's sovereign immunity. However, such immunity is not absolute. Thus, the Court must determine whether ADA does in fact abrogate the State Bar's Eleventh Amendment Immunity for Plaintiff's claim.

"Congress may abrogate the [s]tates' Eleventh Amendment immunity when it both unequivocally intends to do so and 'acts pursuant to a valid grant of constitutional authority.'" *Bd. of Trs. v. Garrett*, 531 U.S. 356, 363 (2001) (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000)). It is undisputed that Congress unequivocally expressed its intent to abrogate Eleventh Amendment immunity in enacting the ADA. *See* 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter"). Thus, the remaining issue is whether, with respect to this particular alleged violation, Congress acted pursuant to a valid grant of constitutional authority.

The Supreme Court and Ninth Circuit have addressed this question for different

portions of the ADA[4] and have reached different conclusions for different provisions. In *Garrett*, the Supreme Court held that Congress did not validly abrogate Eleventh Amendment immunity for claims under Title I of the ADA. 531 U.S. at 374. Additionally, in *Demshki v. Monteith*, 255 F.3d 986, 988-89 (9th Cir. 2001), the Ninth Circuit determined that, under the reasoning of *Garrett*, Congress did not validly abrogate Eleventh Amendment immunity for retaliation claims brought under Title V that were predicated on alleged violations of Title I. However, in *Tennessee v. Lane*, the Supreme Court held that Congress had abrogated the states' Eleventh Amendment immunity with respect to Title II of the ADA, at least when a fundamental right, such as access to the courts were involved. 41 U.S. 509, 533-34 (2004) ("Title II, as it applies to the class of cases implicating the fundamental right of access to the courts, constitutes a valid exercise of Congress' § 5 authority to enforce the guarantees of the Fourteenth Amendment"); *see also Vartanian v. State Bar of California,* 794 Fed. Appx. 597, 600 (9th Cir. 2019) (holding that because the plaintiff's opposition did not rise near to the level of implicating any "fundamental right of access to the courts[,]" Congress had not validly abrogated sovereign immunity for the plaintiff's ADA Title II claim). Thus, whether the State Bar has sovereign immunity from Plaintiff's ADA retaliation claim turns on the alleged predicate violation of the ADA that Plaintiff opposed that resulted the State Bar's purported retaliation.

Plaintiff relies on 42 U.S.C. § 12203 ("Section 12203") as the alleged source of Congressional abrogation. Section 12203, under Title V of the ADA, prohibits retaliation or coercion against individuals who oppose unlawful acts under the ADA. *Louie v. Carichoff*, 2006 WL 662742, at *2 (E.D. Cal. Mar. 16, 2006). It protects any individual who "has opposed any act or practice made unlawful by [the ADA] or has made a charge [under the ADA]." 42 U.S.C. § 12203(a). It provides further that it is "unlawful to coerce, intimidate, threaten, or interfere with any individual . . . on account of his or her having . .

---

[4] "Congress divided the ADA into five sections: private sector employment under Title I; public programs and activities under Title II; public accommodations under Title III; telecommunications under Title IV; and miscellaneous provisions under Title V." *Parr v. L & L Drive–Inn Rest.*, 96 F. Supp. 2d 1065, 1070 (D. Haw. 2000) (citing Americans with Disabilities Act of 1990, Pub.L. No. 101–336, 104 Stat. 327 (1990)).

. exercise[d] . . . any right granted or protected by [the ADA]." 42 U.S.C. § 12203(b). Title V is contingent upon the substantive violations of other provisions of the ADA. The ADA prohibits discrimination in three areas: employment ("Title I"), public services ("Title II"), and public accommodations ("Title III"). *Ross v. Indep. Living Res. of Contra Costa County*, 2010 WL 1266497, at *3 (N.D. Cal. Apr. 1, 2010). Thus, for a plaintiff to have a Title V claim, he must have suffered retaliation for opposing an act or practice made unlawful under the ADA.

Plaintiff's theory of his Title V retaliation claim is that the State Bar retaliated against him because he opposed conduct that violated Title II of the ADA. That is, he filed more than a thousand ADA civil rights cases to redress his clients' ADA violations. Accordingly, to determine whether Congress validly abrogated Eleventh Amendment immunity for Plaintiff's retaliation claim, the Court looks to whether Congress validly abrogated Eleventh Amendment immunity for the Title II violation. *Vartanian*, 794 Fed. Appx. at 600.

The Supreme Court has determined that Congress has validly abrogated state sovereign immunity with respect to Title II of the ADA "as it applies to the class of cases implicating the fundamental right of access to the courts." *Lane*, 541 U.S. at 533–34. In *Lane*, the Supreme Court held that Congress had abrogated the states' Eleventh Amendment immunity with respect to Title II of the ADA, at least when a fundamental right was involved. The Title II violation in *Lane* involved "the fundamental right of access to the courts:" because the respondents were wheelchair-bound paraplegics who claimed they were denied access to the state court system because, among other things, the lack of an elevator in the courthouse prevented them from appearing at hearings. *Id.* at 514-15. In assessing whether Title II was a valid exercise of Congress's § 5 enforcement power, the Court noted that "the right of access to the courts at issue in this case" fell within a class of "basic constitutional guarantees, infringements of which are subject to more searching judicial review." *Id.* at 522-23. The Court then concluded that, given Congress's findings that "many individuals, in many States across the country, were being excluded from

courthouses and court proceedings by reason of their disabilities," Article II was a "congruent and proportional" exercise of Congress's § 5 enforcement power. *Id.* Accordingly, the Court in *Lane* held that Congress had abrogated the state's Eleventh Amendment immunity with respect to Title II of the ADA, at least when a fundamental right, such as access to the courts, was involved.

However, "the right of access to the courts discussed in *Lane* is not a right to practice law and represent a client before the courts. Rather, in *Lane*, the Supreme Court was concerned with a criminal defendant's right to be present during trial and to confront witnesses against him, with a civil litigant's right to a meaningful opportunity to be heard, and with the public's right to attend—i.e., *physically* access—court proceedings." *Oliver v. Virginia Bd. of Bar Examiners*, 312 F. Supp. 3d 515, 529 (E.D. Va. 2018), *appeal dismissed*, 2018 WL 6192209 (4th Cir. July 23, 2018). Stated differently, there is a distinction between ones' physical access to the court addressed in *Lane*, and the ones' privilege of being licensed to practice before a particular court. The latter being Plaintiff's complaint. Thus, "Title II, as it applies to the class of cases implicating professional licensing by the states, does not constitute a valid exercise of Congress's § 5 authority." *Id.* at 531. Accordingly, Congress "did not validly abrogate sovereign immunity with regard to discrimination in the specific field of legal licensing[.]" *Id.*

Notably, Plaintiff has failed to cite to any authority suggesting that Congress has abrogated a state's Eleventh Amendment immunity for this type of Section 12203 claim. In fact, Plaintiff cites no case law at all to support this argument. *See Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (holding that once a defendant has asserted sovereign immunity pursuant to Rule 12(b)(1), "'the party asserting subject matter jurisdiction has the burden of proving its existence,' i.e. that immunity does not bar the suit.") (quoting *Miller v. Wright*, 705 F.3d 919, 923 (9th Cir. 2013)). Plaintiff has not met his burden. Thus, the Court finds that the ADA did not abrogate the State Bar's Eleventh Amendment immunity for Plaintiff's claim.

In sum, the State Bar of Arizona is immune from suit under the Eleventh

Amendment. The Court further finds that any amendment to the SAC would be futile because the Court finds that there are no possible set of factual allegations that could be pled in an amended complaint that would cure the aforementioned deficiencies. Accordingly, the Court will dismiss the State Bar with prejudice.

### b. Ms. Miller and Ms. Vessella's Entitlement to Absolute Immunity

Plaintiff has sued Ms. Miller, senior counsel to the State Bar, and Ms. Vessella, chief counsel to the State Bar, in their personal capacities. Defendants contend that both Ms. Miller and Ms. Vessella have judicial or quasi-judicial immunity for all of Plaintiff's claims. Plaintiff, however, argues that Ms. Miller and Ms. Vessella's conduct was outside of the scope of their authority and was "investigatory and not prosecutorial in nature"; therefore, he contends, they are not entitled to absolute immunity. (Doc. 45 at 9).

The crux of Plaintiff's allegations are that the State Bar, acting through Ms. Miller and Ms. Vessella, conspired with non-parties to "to accomplish a disbarment of Plaintiff . . . . For its part, [the State Bar, acting through Ms. Miller and Ms. Vessella,] agreed to investigate the bar charges even where, on their face, a bar charge would disclose no violation of ethical rules." (Doc. 45 at 8). In other words, Ms. Miller and Ms. Vessella's liability stem from their actions investigating Plaintiff for potential ethical violations and the resulting disciplinary action against him.

The difficulty for Plaintiff is the law. State bar associations and their employees policing the legal profession are entitled to absolute quasi-judicial immunity for their actions. *Simons v. Bellinger*, 643 F.2d 774, 779 (D.C. Cir. 1980); *Clark v. State of Wash.*, 366 F.2d 678, 681 (9th Cir. 1966); *see also Greene v. Zank*, 158 Cal. App. 3d 497, 506 (Cal. Ct. App. 1984) (collecting cases holding that bar associations and their officials charged with the duties of investigating, drawing up, and presenting cases involving attorney discipline enjoy absolute immunity from damage claims for such functions).

The Ninth Circuit has repeatedly held that, as an arm of the state's supreme court in connection with disciplinary proceedings, a state's bar association "is an 'integral part of the judicial process' and is therefore entitled to the same immunity which is afforded to

prosecuting attorneys in that state." *Clark*, 366 F.2d at 681; *see also Hirsh v. Justices of Sup.Ct. of State of Cal.*, 67 F.3d 708, 715 (9th Cir. 1995) (per curiam) ("The Bar Court judges and prosecutors have quasi-judicial immunity from monetary damages."). In *Simons*, the District of Columbia Circuit Court held that members of the District of Columbia Committee on Unauthorized Practice of Law were entitled to absolute immunity in their investigatory activities to determine if the plaintiff had complied with the laws and rules governing practice of law in the jurisdiction. 643 F.2d at 780. The *Simons* Court further held that the committee members' work is functionally comparable to the work of judges, which requires the full protection of absolute immunity. *Simons*, 643 F.2d at 780 (judicial functions include initiation of prosecution, promulgation of rules, and adjudication of disciplinary cases).

In an attempt to overcome this bar, Plaintiff argues that there is no immunity for investigative acts taken by Ms. Miller and Ms. Vessella. Although that may be a correct statement as to some prosecutors who may only have qualified immunity during the investigative phase, it is not true with respect to the State Bar's counsel. *See Simons*, 643 F.2d at 779 (holding that although other courts have drawn the analogy between a state bar employee and a prosecutor and relied upon that rough similarity to grant absolute immunity, the court does not accept the proposition that the state bar employee defendants are, for immunity purposes, precisely identical to prosecutors). The *Simon* court further held that because the state bar investigates misconduct with the purpose of determining whether or not the misconduct warrants a formal prosecution; "the decision of whether or not to prosecute . . . is comparable to judicial decisionmaking and which also requires the full protection of absolute immunity." *Id.* Furthermore, the "inquiries" it makes are "necessarily antecedent to its determination regarding prosecution" and therefore are entitled to absolute immunity. *Id.*

Thus, the Court finds that Ms. Miller and Ms. Vessella, as counsel to State Bar, are entitled to quasi-judicial immunity for their actions in both the prosecutorial and investigative phases of Plaintiff's disciplinary proceeding. Accordingly, the Court finds

they have absolute immunity for their alleged conduct, which defeats all of Plaintiff's claims against them. Moreover, the Court finds that any amendment to the SAC would be futile because the Court finds that there is no possible set of factual allegations that could be pled in an amended complaint that would cure the aforementioned deficiencies. Accordingly, the Court will dismiss Ms. Miller and Ms. Vessella with prejudice.

IV. **CONCLUSION**

The Court has dismissed all of Plaintiff's claims against the State Bar, Ms. Miller and Ms. Vessella with prejudice. Thus, the only remaining Defendants are John Doe Miller, Ms. Miller's spouse, and John Doe Vessella, Ms. Vessella's spouse. (Doc. 22 at 1-2). Specifically, Plaintiff provides that both John Doe Miller and John Doe Vessella only "[a]dded only in [their] capacity as spouse[s] of [Ms.] Miller" and Ms. Ms. Vessella, respectively. (*Id.*) As both Ms. Miller and Ms. Vessella are dismissed with prejudice, and the SAC does not identify any conduct attributable to either John Doe Miller or John Doe Vessella, the Court will dismiss Plaintiff's claims against them with prejudice as well.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 43) is **GRANTED with prejudice**. The Clerk of Court is respectfully directed to enter judgment accordingly and terminate this action.

**IT IS FURTHER ORDERED** that Defendants' Motion for Judicial Notice (Doc. 42) is **GRANTED**.

**IT IS FINALLY ORDERED** that Defendants' Motion to Defer Scheduling Order Deadlines (Doc. 52) is **DENIED as moot**.

Dated this 17th day of March, 2020.

Honorable Diane J. Humetewa
United States District Judge